Timothy GREENLEE, Appellant,
(Defendant Below),

v.

STATE of Indiana, Appellee,
(Plaintiff Below).

No. 82S00–9408–CR–743.

Supreme Court of Indiana.

Sept. 18, 1995.

Dennis A. Vowels, Evansville, for appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for appellee.

SHEPARD, Chief Justice.

A jury found appellant Timothy Greenlee guilty of attempted murder, a class A felony, Ind.Code Ann. § 35-41-5-1 (West 1986), § 35-42-1-1 (West Supp.1993), and determined that he was a habitual offender. Ind. Code Ann. § 35-50-2-8 (West Supp.1993). He was sentenced to a term of 30 years for the attempted murder conviction and 30 years was added for being a habitual criminal. We affirm.

## I. Statement of the Issues

Greenlee raises three issues on appeal. First, he asserts his right to a fair trial was violated at two points during the trial. Specifically, he cites the trial court's refusal to order a mistrial after a police officer testified about a prior, unrelated arrest. He also believes his fair trial rights were violated when another witness testified about an uncharged act of misconduct.

Second, Greenlee alleges the trial court improperly instructed the jury about the elements of attempted murder. Greenlee maintains the trial court failed to advise the jury adequately that they must find Greenlee intended to kill the victim.

Finally, Greenlee alleges the evidence in the trial was insufficient to convict him of attempted murder.

## II. Statement of the Facts

After spending a few hours drinking beer with Kinsey Ledford and several other acquaintances outside his home in an Evansville neighborhood on August 20, 1993, Greenlee made some insulting comments about Ledford's girlfriend. Eventually Greenlee's remarks prompted an altercation between the two men.

Ledford struck Greenlee in the face. In response, Greenlee knocked Ledford down and began to smash his head against the concrete surface of the street. Next, he grabbed Ledford by the hair and knocked him head-first into a car across the street. As Ledford lay prone on the street, Greenlee removed a knife from his pocket. He "popped" open the blade and said "I'll kill you, I'll cut a hole in you as big as Europe." (R. at 220.)

One of the other people at the scene, Tom Jones, restrained Greenlee and took the knife from his hand. An ambulance eventually took Ledford to the hospital for treatment.

## III. Admissibility of Testimony About Prior Misconduct

■ During Greenlee's criminal trial, the deputy prosecutor asked Evansville Police Officer Brian Underwood if he was "familiar

with Timothy Greenlee?" Officer Underwood replied, "Yes, I had arrested him in the past." (R. at 156.)

Greenlee's attorney immediately objected to Officer Underwood's statement and moved for a mistrial. He argued Underwood's testimony prejudiced the jurors. The trial court denied the motion and directed the jury to disregard the testimony about Greenlee's prior arrest.

The trial court similarly directed the jury to disregard certain testimony from Jones, who had testified that after the altercation between Greenlee and Kinsey Ledford, he heard that Greenlee had taken a stick and "busted a windshield" on a car. Greenlee's attorney objected to the hearsay testimony and the trial court ordered the jury to disregard the testimony about the windshield.

Greenlee asserts his right to a fair trial was denied when the trial court denied his motion for a mistrial after Officer Underwood testified he had arrested Greenlee once in the past.

Granting a mistrial is within the sound discretion of the trial judge. *Duke v. State* (1968), 249 Ind. 466, 233 N.E.2d 159. Absent an abuse of that discretion, this Court will not disturb a trial court's ruling. *Love v. State* (1977), 267 Ind. 302, 369 N.E.2d 1073. Even if evidence of uncharged misconduct is heard by the jury, a prompt admonishment to the jury to disregard the improper testimony is usually enough to support a denial of a motion for mistrial. *Schlomer v. State* (1991), Ind., 580 N.E.2d 950.

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ind.Evidence Rule 404(b). To determine if testimony of prior uncharged misconduct should warrant a new trial, however, "the circumstances must be analyzed as to whether the evidence was intentionally injected or came in inadvertently and as to what degree the defendant was subjected to improper speculation by the jury." *Davis v. State* (1989), Ind., 539 N.E.2d 929, 931 (citing *Henson v. State* (1987), Ind., 514 N.E.2d 1064).

In *Davis,* defendant Danny W. Davis was being tried for burglary. The burglary victims gave police the license plate number to a car that matched the description of the vehicle they saw leaving their home after the burglary. *Id.* at 930. Testifying for the State, a police officer said that after police traced the license plate number to Davis, he found an outstanding warrant for Davis's arrest. Davis's trial attorney immediately objected to the officer's statement. The trial court admonished the jury to disregard the remark. While noting such admissions tend to prejudice a jury because it may infer the defendant had a criminal record, the *Davis* Court found no error in admitting the remark. *Id.* at 931.

This Court decided the officer's remark, while "unfortunate," was stated in such an offhand manner in the middle of a lengthy interrogation without any specific reference to a crime. *Id.* Similarly, Officer Underwood's statement about the earlier arrest came at the beginning of his testimony and also never included a specific reference to the crime.

Greenlee offers support for his claim that Officer Underwood's remark unfairly prejudiced him by citing *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. In *White,* however, the Court found a police officer's testimony about prior uncharged conduct warranted a new trial largely because the officer's testimony constituted an evidential harpoon. *Id.* at 76, 272 N.E.2d at 319.

The Court noted that the officer's only contribution to the trial was his knowledge that the armed robbery defendant had been a suspect in another robbery: "He knew nothing concerning the defendant's involvement, if any, with the crime for which he was standing trial ... We think it apparent that the sole purpose of calling the witness to wield the *evidential harpoon,* deliberately calculated by counsel to prejudice the jury against the defendant and his defense." *Id.* Despite a limiting instruction from the trial court, this Court found the jury was improperly influenced by the officer's statement. *Id.*

Greenlee's case can be distinguished. Unlike the officer who carried the evidentiary

harpoon in *White*, Officer Underwood knew substantially more about the defendant's connection to the crimes at issue. Officer Underwood was one of the first police officers to arrive after the disturbance was reported and interviewed the defendant. His testimony had relevance in the trial well beyond his mere knowledge of Greenlee's earlier arrest.

■ The opinion in *Burdine v. State* (1985), Ind., 477 N.E.2d 544, also helps determine if a remark about uncharged conduct prejudiced the defendant. "The question we must ask is whether, absent the improper comment, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *Id.* at 546 (citing *United States v. Hasting*, 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983)).

In light of the trial testimony against Greenlee from an eyewitness, it is likely the jury would have returned a verdict of guilty even without the improper testimony. Given the strong testimony against Greenlee and the absence of any evidence in the record of a deliberate attempt to inject Officer Underwood's testimony into trial[1], the trial court acted within its discretion to deny Greenlee's motion for a mistrial. *Schlomer*, 580 N.E.2d 950.

■ As for Jones's comment that Greenlee "busted a windshield," we note that Greenlee's objection at trial was based on hearsay, and the trial court sustained his objection and admonished the jury. The court gave what Greenlee requested and there is no error for review on appeal.

### IV. Adequacy of Attempted Murder Instruction

■ Greenlee also asserts the trial court erred by not adequately instructing the jury that it must find beyond a reasonable doubt that Greenlee intended to kill Ledford.

Following the evidence on Count I, Attempted Murder, the trial court gave the following instructions:

Court's Final Instruction No. 1

The crime of Attempted Murder is defined by statute as follows:

A person attempts to commit a crime when, acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony of the same class as the crime attempted. . . .

To convict the Defendant the state must have proved each of the following elements:

The Defendant

1. on or about August 20, 1993, knowingly
2. engaged in conduct, to-wit: repeatedly striking at and against the head and body of Kinsey Ledford with his hands and feet and then pulling a knife and attempting to stab the said Kinsey Ledford as he lay unconscious on the ground, *with the intent to kill Kinsey Ledford.*
3. that the conduct was a substantial step toward the commission of the crime of murder.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty. (R. at 420–21) (emphasis added) (citations omitted). . . .

Court's Final Instruction No. 2

Attempt, is a crime of specific intent, that is, it must be done with the intent to commit a [sic] alleged felony.

You are instructed that where a specific intent must be proven, beyond a reasonable doubt, as in ATTEMPT, to make an act an offense, the State is not required to make proof of specific intent by direct evidence, for purpose and intent are subjective facts. That is, they exist within the mind of the person, and since you cannot delve into a person's mind and determine his purpose and intent, you may look to all the surrounding circumstances, including what was said and done in relation thereto. The State is only required to produce such evidence as will satisfy the jury, beyond a reasonable doubt, that the crime charged

1. Greenlee's defense attorney at trial said he could not tell if the testimony was deliberate or inadvertent but felt it was prejudicial in either case. (R. at 161.)

was committed by the Defendant. A determination of the Defendant's intent may be arrived at by the jury from a consideration of the Defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. (R. at 422.)

■ This Court established the standard that trial courts should use to instruct juries for attempted murder in *Spradlin v. State* (1991), Ind., 569 N.E.2d 948. *See also Taylor v. State* (1993), Ind., 616 N.E.2d 748.

In *Spradlin,* this Court held that

an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing.

*Spradlin,* 569 N.E.2d at 950.

Following this standard we have also noted: "Absent inclusion of specific intent as an element of attempted murder, individuals who act without the necessary mens rea could be found guilty of attempted murder." *Greer,* 643 N.E.2d at 326 (citing *Taylor,* 616 N.E.2d at 749).

As in *Greer,* the court in Greenlee's trial told the jurors in Final Instruction No. 1 that if they decide the defendant "knowingly or intentionally" attempted to murder the victim, they could find him guilty. In *Greer,* this Court reversed the defendant's conviction after it found that an instruction of that type might have allowed the jury to convict the defendant of attempting to murder the victim by finding he acted with the lesser mens rea of "knowingly." *Id.* at 326.

In Greenlee's trial, however, the trial court's instructions mentioned intent to kill, intent to commit murder and specific intent at three different points. Final Instruction No. 1 stated the jury must convict the Defendant if the State proved Greenlee struck the victim and drew his knife "with the intent to kill Kinsey Ledford." (R. at 420.)

The court's Final Instruction No. 2A also explicitly stated that the "requisite intent to commit murder may be inferred from the deliberate use of a deadly weapon in a manner reasonably likely to cause death or great bodily harm." (R. at 423). Moreover, the court's Final Instruction No. 2 pointed out: "Attempt is a crime of specific intent, that is, it must be done with the intent to commit a [sic] alleged felony." (R. at 422).

The instructions used here by the trial court needed revision in light of *Spradlin,* but taken together they adequately informed the jury that it needed to conclude the defendant must have acted with the intent to kill before it could convict him.

## V. Sufficiency of the Evidence

■ Finally, Greenlee asserts the evidence used to support his conviction for attempted murder was insufficient. Generally, when addressing a sufficiency of the evidence issue, this Court will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing the credibility of the witnesses, we conclude that a reasonable trier of fact could find each element of the charged crime proven beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223.

Using this analysis, it is apparent from the testimony from eyewitness Jones that a jury could reasonably find that Greenlee's actions constituted an attempt to murder Ledford.

## VI. Conclusion

Based on the foregoing, we affirm the judgment of the trial court in all respects.

DeBRULER, DICKSON, SULLIVAN and SELBY, JJ., concur.