**Michael A. GIBSON, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 55A05–9704–CR–152.**

Court of Appeals of Indiana.

April 28, 1998.

Transfer Granted July 8, 1998.

---

Brian H. Williams, Martinsville, for appellant-defendant.

Jeffrey A. Modisett, Attorney General, Katherine L. Modesitt, Deputy Attorney General, Indianapolis, for appellee-plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Michael A. Gibson appeals his convictions for attempted murder, two counts of conspiracy to commit murder, and burglary resulting in bodily injury, all class A felonies. He raises eight issues for our review. However, because the first issue is dispositive, we will address it first and then address only those remaining issues that are likely to be presented upon retrial. These issues are restated as follows:

1) whether the trial court erred when it responded to the jury's request during deliberations for certain exhibits by sending back to the jury all of the trial exhibits;

2) whether the trial court erroneously instructed the jury on the elements of attempted murder;

3) whether the trial court erroneously denied his motion to suppress his initial statement to police because the investigator failed to tape record the statement;

4) whether the trial court erroneously permitted the State to amend its charging information prior to trial; and

5) whether the trial court erroneously refused to give his tendered instruction concerning the voluntariness of his statements to police.

We reverse.

The facts most favorable to the judgment follow. On the evening of March 25, 1996, Gibson told Wesley Seger that he wanted to kill Elba and Michelle Davis because they had set him up on a drug deal. In the early morning of March 26, 1996, Gibson, Seger, and Jeremy Kirkley, each armed with two knives, went to the Davis' house. Gibson, Seger, and Kirkley entered the house where Cora Davis, Paul Brown, and Cora's three year old son, Zachary, were sleeping. Seger stabbed Cora. Brown wrestled with Gibson and was also stabbed. After Gibson escaped from Brown, Brown began to struggle with Seger and Seger stabbed Brown in the chest.

The State charged Gibson with attempted murder, two counts of conspiracy to commit murder, and burglary resulting in bodily injury. A jury later found Gibson guilty as charged. Other relevant facts will be supplied as needed.

**I.**

The dispositive issue raised for our review is whether the trial court erred when it responded to the jury's request for certain exhibits by supplying the jury with all of the exhibits admitted at trial. After jury deliberations had begun, the jury sent two questions to the trial court. The first question involved the definition of murder. The second was a request for all of the photographic exhibits presented at trial. The trial court attempted to contact counsel but was unsuccessful because counsel were at lunch. Prior to the return of counsel, the trial court instructed the bailiff to provide the jury with all of the trial exhibits rather than the specific photographic exhibits requested in the jury's second question. After counsel returned, the trial court informed them of what it had done. Gibson's counsel objected to the trial court's response and then moved for a mistrial, which the trial court denied.

Gibson maintains that the trial court failed to follow the proper procedure set forth in Ind.Code § 34–1–21–6 in responding to the jury's request. This section provides as follows:

"After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

I.C. § 34–1–21–6. Gibson asserts that the trial court committed error first because it responded to the jury's request without notice to the parties and, second, because the evidence was not presented to the jury in open court as required by the express language of this section.

The State counters that I.C. § 34–1–21–6 does not apply to the facts of this case because application of the statute is triggered only when "there is a disagreement between [the jurors] as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case." I.C. § 34–1–21–6. The State contends that the jury's request for the photographic exhibits in the present case did not express any disagreement as to these exhibits.

Our review of the case law in this area reveals that different panels of this court have expressed opposing views on the applicability of this statute. In *Jones v. State,* this court held that jury requests to review exhibits are not within the scope of the statute absent an express indication of disagreement. *Jones v. State,* 656 N.E.2d 303, 307 (Ind.Ct.App.1995), *trans. denied; see also Sturma v. State,* 683 N.E.2d 606, 609 (Ind.Ct. App.1997); *State v. Chandler,* 673 N.E.2d 482, 485 (Ind.Ct.App.1996).

However, in *State v. Winters,* we stated that "juries may manifest disagreement about testimony by requesting to rehear it. Indeed we question why a jury that was in agreement as to the testimony at issue would request to rehear it." *State v. Winters,* 678 N.E.2d 405, 409 (Ind.Ct.App.1997) (citations omitted). Based on this reasoning, we held that a jury's request to rehear a portion of a tape recording presented at trial was sufficient to manifest disagreement as to that particular evidence and that, as a result, the trial court's failure to follow the procedure in I.C. § 34–1–21–6 was reversible error. *Winters,* 678 N.E.2d at 410; *see also Anglin v. State,* 680 N.E.2d 883, 885 (Ind.Ct.App.1997) (holding that "when a jury requests that it be given an opportunity to rehear testimony or see exhibits for a second time, the jury is expressing disagreement or confusion about that evidence, sufficient to trigger application of I.C. 34–1–21–6, unless the circumstances surrounding the request indicate otherwise."), *reh'g denied, trans. denied.*

■ While we agree that the jury's request for the exhibits in this case did not expressly indicate any disagreement, we adopt the view expressed in *Winters* that a request for particular pieces of evidence suggests disagreement with respect to that evidence. To the contrary, one panel of this court recently stated that to conclude that any request from the jury to view exhibits or rehear testimony necessarily stems from disagreement "is to engage in an impermissible judicial revision of the statute." *Riggs v. State,* 689 N.E.2d 460, 463 (Ind.Ct.App.1997).

We disagree with such a narrow interpretation of the statute.[1]

■ We are not convinced that requiring express disagreement in the jury's request fully serves the purpose of the statute. The reasonable interpretation of a request to review exhibits is that there is, at minimum, some question about the exhibits. It is unlikely that a jury will request to see exhibits when there are no questions or confusion as to what the exhibits contain or convey or the testimony regarding them. This is particularly true of photographic exhibits which are generally demonstrative and serve to illustrate the testimony about what is depicted in the exhibits. Furthermore, the application of the statute should not be triggered by the chance that a jury will expressly state the reason why they wish to review the exhibits, as they often do not. Our view is that any request for specific exhibits or testimony indicates disagreement for the purposes of the statute "unless the circumstances surrounding the request indicate otherwise."[2] *Anglin v. State,* 680 N.E.2d at 885. Therefore, we conclude that the jury's request for the photographic exhibits in this case sufficiently suggests disagreement about the exhibits such that it triggered the application of I.C. § 34–1–21–6.

Here, the trial court responded to the jury's request prior to notification of the parties as required by the statute. Further, the trial court allowed the jury to review the exhibits unsupervised which is also contrary to the statute. However, considering that the trial court sent all of the trial exhibits rather than the specific exhibits requested and that jury had previously viewed all of these exhibits in open court during trial, we see little risk that the jury would misuse or give undue weight to particular exhibits. As such, we are initially inclined to hold that, despite failure to comply with the statute, the trial court's error was harmless because Gibson has failed to demonstrate any prejudice. *See Jones,* 656 N.E.2d at 307 (holding that there was no reversible error where, after receiving a question on a point of law from the jury, the trial court sent the complete set of instructions to the jury without notifying the parties as required by the statute because the defendant failed to show any prejudice); *Ingram v. State,* 547 N.E.2d 823, 829 (Ind.1989) (holding no reversible error was committed by the trial court where the trial court sent all of the trial exhibits to the jury room after the jury requested certain photographic exhibits because the defendant failed to show an abuse of discretion).

■ However, the supreme court's holding in *Powell v. State* appears to preclude such a holding. In *Powell,* a deadlocked jury requested a tape recorder and three audiotapes of telephone conversations and alleged drug transactions so that it could review this evidence in the jury room. Over the defendant's objection, the trial court complied with the jury's request. The *Powell* court noted that I.C. § 34–1–21–6 required the tapes to be played in open court. *Id.* at 858. After concluding that a defendant's right to procedural protections of the statute was a "substantial" right, the court held that the trial court's failure to follow the statute was reversible error. *Id.* In addition, it noted that "the legislature has apparently made the judgment that once it has retired to deliberate, to permit the jury to review testimony or specific pieces of evidence alone and unguided by the court unacceptably risks that the jury will either give undue weight to that

---

1. We also note the *Riggs* panel's position that because the statute specifically refers to "testimony" it does not apply to requests for exhibits. Again, we decline to interpret the statute in such a narrow manner. Given that the spirit of the statute is to prevent the misuse of evidence and to afford the parties an opportunity to be present when the jury reviews the evidence, we do not see a need to make such a distinction. *See Powell v. State,* 644 N.E.2d 855, 858 (Ind.1994) (referring to the "review [of] testimony *or specific pieces of evidence....*" (emphasis added) in its discussion of the statute's purpose).

2. We reserve the question of whether a jury's request for all exhibits after deliberations have begun would constitute sufficient evidence of disagreement to invoke the statute. Such a request may constitute a circumstance where it's clear that there is no specific disagreement as to any particular exhibits. Our holding here is limited to a jury's request for particular pieces of evidence.

evidence or otherwise misuse it." *Powell,* 644 N.E.2d at 858. We interpret this statement to mean that the risk that the jury might misuse the evidence is substantial enough to make any violation of the statute *per se* reversible error, especially given the argument that the misuse of evidence in closed jury deliberations would be difficult to detect. More significantly, the *Powell* court did not engage in a harmless error or prejudice analysis before reaching its conclusion. Therefore, in light of *Powell,* we feel compelled to hold that the trial court's failure to comply with the statute was reversible error. Consequently, we reverse Gibson's convictions.

## II.

The remaining issues we will address are those that are likely to be presented on retrial. The first of these issues is whether the trial court properly instructed the jury on the elements of attempted murder. At the close of Gibson's trial, the trial court gave the following instructions relating to attempted murder:

"A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward the commission of the crime.

A person who knowingly or intentionally kills another human being commits murder.

The elements that the State of Indiana must prove beyond a reasonable doubt are:

1) The defendant, Michael A. Gibson

2) knowingly

3) attempted by taking a substantial step toward the commission of the crime

4) to intentionally kill

5) another human being . . .

\* . \* \* \* \* \*

The acts of a person who intends to commit a crime will constitute an attempt where the acts themselves clearly indicate an intent to commit the crime, and the acts are a substantial step in a course of con-

duct planned to culminate in the commission of the crime.

\* · \* \* \* \* \*

For the crime of Attempted Murder, the defendant must act with specific intent to kill when he took the substantial step towards committing the crime."

Record, pp. 245–248 (citations omitted).

■ It is a well settled rule that jury instructions for attempted murder must include the requirement of a specific intent to kill. *Channell v. State,* 658 N.E.2d 925, 928 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* This rule requires an instruction to specifically state that to convict for attempted murder, the jury must find that the defendant intended to kill the victim. *Beasley v. State,* 643 N.E.2d 346, 348 (Ind.1994). In other words, "[t]he specific intent necessary to convict upon a charge of attempted murder is intent to achieve the result of death; not merely intent to engage in conduct carrying with it the risk of death." *Clark v. State,* 597 N.E.2d 4, 6 (Ind.Ct.App.1992), *reh'g denied, trans. denied.*

■ Here, Gibson argues that the elements of the instruction given are erroneous because they state that the jury must find that Gibson "knowingly" engaged in the substantial step. He maintains that the case law requires that the word "intentionally" be used in place of "knowingly." Although we agree that the culpability of "knowingly" alone is insufficient to convict a defendant of attempted murder, the instructions here go further to state that the jury must find that Gibson "knowingly attempted . . . *to intentionally kill.*" Record, p. 245 (emphasis added). The instructions also included statements that, for the crime of attempted murder, "the defendant must act with *specific intent to kill*" as well as "acts . . . will constitute an attempt where the acts themselves clearly indicate an intent to commit the crime. . . ." Record, pp. 247, 248 (emphasis added).

These instructions are similar to those affirmed by the Indiana Supreme Court in *Greenlee v. State,* 655 N.E.2d 488 (Ind.1995). In that case, the supreme court held that instructions for attempted murder were ade-

quate where they stated that the jury must find that the defendant "knowingly engaged in conduct ... with the intent to kill [the victim]." *Id.* at 492. The supreme court also noted that the instructions contained other references to the requirement of the specific intent to kill such that the instructions as a whole "adequately informed the jury that it needed to conclude that the defendant must have acted with the intent to kill before it could convict him." *Id.*

Here, not only are the elements listed for attempted murder phrased in a fashion similar to that in *Greenlee,* but the instructions also included an additional reference to the requirement of the "specific intent to kill." Record, p. 248. As such, we conclude that the instructions, taken together, adequately informed the jury that they must find that Gibson acted with the requisite intent to kill. *See id.* Therefore, we hold that the attempted murder instruction given by the trial court was not erroneous.

### III.

Gibson next argues that the trial court erroneously denied his motion to suppress his initial statement to police because the investigator, Officer Buskirk, failed to tape record the statement. Specifically he asserts that

> "The Defendant was denied the use of any possible exculpatory evidence contained in Mr. Gibson's statement, be that either direct or contextual.... Additionally, this failure to preserve Mr. Gibson's interrogation placed the jury in a position where they were denied the ability to use the context and tone of the conversation to determine the voluntariness of the alleged confession."

Appellant's brief, pp. 29–30.

■ Gibson correctly notes the standard for reviewing the failure to preserve potentially exculpatory evidence by police. In *Arizona v. Youngblood,* the United States Supreme Court held that while "the good or bad faith of the State [is] irrelevant when the State fails to disclose to the defendant material exculpatory evidence," failure to preserve

potentially useful evidence does not constitute a denial of due process absent a showing of bad faith on the part of the police. *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), *reh'g denied.* This principle has also been expressly recognized and applied by both the Indiana Court of Appeals and the Indiana Supreme Court. *See Bivins v. State,* 642 N.E.2d 928, 943 (Ind.1994), *reh'g denied, cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734; *McGowan v. State,* 599 N.E.2d 589, 594 (Ind.1992); *Rita v. State,* 663 N.E.2d 1201, 1204 (Ind.Ct.App.1996), *aff'd in part, vacated in part on other grounds.*

Gibson asserts that Officer Buskirk's actions constituted bad faith because he stated that his policy was to tape witnesses' statements but not suspects', because he taped Gibson's second statement and the statements of the co-defendant in this case, and because he only recorded "a few lines of cryptic notes" during the interrogation which lasted over half an hour. Appellant's brief, p. 29. However, our own review of the record also reveals that Officer Buskirk testified that he did not have a tape recorder available at the time that Gibson wished to make a statement. He also testified that it is not the recommended procedure to tape record interrogations and confessions and that tape recorders often "scare many defendants." Record, pp. 1322, 1647. With respect to the limited notes that Officer Buskirk took, he stated that "[e]very time you take a note you disrupt the flow of the interview so you don't take anymore notes than you have to." Record, p. 1321.

■ We conclude that such circumstances do not constitute evidence of bad faith. The evidence indicates that Officer Buskirk, in not tape recording the statement, was merely following his standard procedures for interrogating suspects, rather than affirmatively attempting to prevent Gibson from having a verbatim statement which might potentially yield useful evidence for his defense. Absent a showing bad faith on the part of the police, the failure to tape Gibson's statement does not bar its admission.[3] *See Bivins,* 642

3. Gibson also argues that Officer Buskirk "pre- served within his notes only the portions he saw

N.E.2d at 943. Therefore, the trial court's denial of Gibson's motion to suppress was not erroneous.

## IV.

The next issue we must address is whether the trial court erroneously permitted the State to amend its charging information prior to trial. The original charging information contained one count of attempted murder, two counts of conspiracy to commit murder and one count of burglary causing bodily injury. In Count I, the state charged that Gibson "did attempt to commit the crime of Murder by knowingly stabbing Paul Brown three (3) times with a deadly weapon." Record, p. 12. Count II charged that Gibson, "with intent to commit a felony to wit: Murder did agree with Wesley P. Seger to commit the crime of Murder and that in furtherance of the said agreement Wesley Seger did perform an overt act to wit: stabbing Cora Davis six (6) times with a deadly weapon to wit: knife." Record, p. 12. Count III charged that Gibson, "with intent to commit a felony to wit: Murder did agree with Wesley P. Seger to commit the crime of Murder and that in furtherance of the said agreement Michael A. Gibson did perform an overt act to wit: stabbing Paul Brown three (3) times with a deadly weapon to wit: knife." Record, p. 12.

Prior to trial but after the omnibus date, the State moved to amend Counts I, II, and III by deleting the words "three (3) times," "six (6) times," and "three (3) times," respectively. Record, p. 154. Additionally, the State moved to amend Count I by changing "knowingly kill another human being" to "intentionally kill another human being." Record, pp. 1788–1789. The trial court, over Gibson's objection, granted the State's motions to amend.

Gibson contends that the amendment of the charging information violated I.C. § 35–34–1–5, which provides, in relevant part:

"(a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including:

\* \* \* \* \* \*

(3) the presence of any unnecessary repugnant allegation;

\* \* \* \* \* \*

(9) any other defect which does not prejudice the substantial rights of the defendant.

\* \* \* \* \* \*

(b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:

(1) thirty (30) days if the defendant is charged with a felony; or

(2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;

before the omnibus date. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

(c) Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant."

Gibson contends that the amendment of the information constituted a change in substance rather than a change in form and, as such, section (b) applies to the amendment. This section requires that the change be made before the omnibus date. Here, the State amended the information after the omnibus date. As a result, Gibson argues that the amendment was in violation of the statute.

fit [which are] principally statements that are either subjectively false or of an inculpatory nature." Appellant's brief, p. 30. However, we note that such an argument goes only to the weight of the evidence and does not affect its

admissibility. *See Avant v. State*, 528 N.E.2d 74, 76 (Ind.1988) (holding that the fact that a confession was not taped "affects the weight of the evidence and does not bar its admission.").

However, the State asserts that the changes affected form only and, thus, the amendment was proper under section (c) which permits changes in form any time before, during or after trial as long as such changes do not prejudice the substantial rights of the defendant. *See* I.C. § 35–34–1–5(c). Thus, the question before us is whether the changes made by the State were of form or substance.

 Although an information may not be amended to change the theory of the case or the identity of the offense charged, it may be amended at any time to cure a defect if the substantial rights of the defendant are not prejudiced. *Robertson v. State*, 650 N.E.2d 1177, 1181 (Ind.Ct.App.1995), *reh'g denied*. If a defense under the original information would be equally available after the amendment is made and the accused's evidence would be equally applicable to the information in one form as in the other, the amendment is one of form and not substance. *Rainey v. State*, 557 N.E.2d 1071, 1075 (Ind. Ct.App.1990). An amendment is of substance only if it is essential to the making of a valid charge of the crime. *Id.*

 We agree with the State that the changes made to the information are changes in form only. The first amendment to the charges for conspiracy to commit murder, which removed the words "three (3) times" and "six (6) times," did not alter the overt act of "stabbing." As such, the theory of prosecution was not changed. *See Abner v. State*, 497 N.E.2d 550, 554 (Ind.1986) (holding that "[a] minor variance in the factual basis of an essential element may not alter the theory prosecution."), *reh'g denied*. Additionally, the removal of "three (3) times" did not alter the substantial step requirement of "stabbing" in the attempted murder charge. The second amendment to the attempted murder charge which changed the words "knowingly kill" to "intentionally kill" only created a higher burden for the State and, as such, could not be prejudicial to Gibson.

Because these changes neither altered the theory of prosecution nor prejudiced Gibson in any other way, and because the changes did not require Gibson to alter his defense to the evidence needed to make his defense, the changes were in form only. *See Robertson*, 650 N.E.2d at 1181; *Rainey*, 557 N.E.2d at 1075. Consequently, under section (c) of the statute, the amendments were timely. Therefore, we conclude that the trial court did not err by allowing the State to amend the charges.

### V.

 The final issue for our review is whether the trial court erroneously refused to give Gibson's tendered instruction concerning the voluntariness of his statement to police. To determine whether a proposed instruction is warranted, the trial court must weigh the evidence and reasonable inferences arising therefrom. As long as there is evidence in the record capable of supporting its decision, a reviewing court will not presume to reweigh the evidence and disturb the trial court's decision. *Tanner v. State*, 471 N.E.2d 665, 667 (Ind.1984).

 When reviewing the refusal of a tendered jury instruction, we must determine whether the tendered instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions. *Jewell v. State*, 672 N.E.2d 417, 425 (Ind.Ct.App.1996), *trans. denied*. However, trial courts are not required to follow the exact language of approved instructions and may use any language that correctly expresses the principles involved. *Snellgrove v. State*, 569 N.E.2d 337, 345 (Ind. 1991). Whereas the admissibility of a confession is solely a matter for the trial court to determine, the voluntariness of a confession is a matter properly before the jury to the extent that the circumstances affect the confession's weight and credibility. *Stanger v. State*, 545 N.E.2d 1105, 1111 (Ind.Ct.App. 1989), *overruled in part on other grounds*.

Here, the instruction tendered by Gibson read as follows:

"A statement or act or omission is 'knowingly' made or done, if done voluntarily or intentionally, and not because of mistake or accident or other innocent reason.

In determining whether any statement or act or omission claimed to have been made by a Defendant outside of court, and after a crime has been committed, was knowingly made or done, the jury should consider the age, sex, training, education, occupation, and physical and mental condition of the Defendant, and his/her treatment while in custody or under interrogation, as shown by the evidence in the case; and also all other circumstances in evidence surrounding the making of the statement or act or omission.

If the evidence in the case does not convince you beyond a reasonable doubt that a confession was made voluntarily and intentionally, then you should disregard it entirely. On the other hand, if the evidence in the case does show beyond a reasonable doubt that a confession was in fact voluntarily and intentionally made by a Defendant, you may consider it as evidence in the case against the Defendant who voluntarily and intentionally made the confession."

Record, p. 230. Assuming arguendo that this tendered instruction correctly states the law and that there was evidence in the record to support the instruction, the trial court's refusal of the instruction was not erroneous because the substance of Gibson's instruction was adequately covered by the final instruction given by the trial court. The final instruction read as follows:

"You have before you evidence that the defendant made confessions relating to the crime(s) charged in the information.

It is for you to determine whether the Defendant made the confessions and, if so, what weight should be given the confessions.

In determining the weight to be given the confession, you should consider all the circumstances under which they were made."

Record, p. 263.

 This instruction adequately informs the jury of their duty to determine the weight and credibility of the confession. *See Stanger*, 545 N.E.2d at 1111. Furthermore, this instruction closely tracks an instruction previously approved by the Indiana Supreme Court. In *Abbott v. State*, the supreme court upheld the trial court's refusal to give an instruction on voluntariness of the defendant's confession which specifically instructed the jury to consider the defendant's intoxication at the time the alleged admission was made. *Abbott v. State*, 535 N.E.2d 1169, 1173 (Ind.1989). The court stated that "[t]he jury was instructed that they must determine whether appellant made the admission and if so, what weight should be given to the admission. In determining the weight to be given to an admission, they were to consider all the circumstances under which it was made." *Id.* The court concluded that this instruction adequately covered the subject of the defendant's instructions. As the instructions given in the case before us were almost identical to those given in *Abbott*, we conclude that the instructions given were adequate under the circumstances. Therefore, we hold that the trial court did not err in refusing to give Gibson's tendered instruction. *See Jewell*, 672 N.E.2d at 425.

For the reasons stated in the first section of this opinion, we reverse Gibson's convictions.

Reversed.

RUCKER and DARDEN, JJ., concur.