Rodney **BOOKER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 49A02–9908–CR–544.

Court of Appeals of Indiana.

Dec. 29, 2000.

Michael E. Caudill, Indianapolis, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Rodney Booker, appeals his convictions for Attempted Murder, a Class A felony,[1] two counts of Criminal Confinement, as Class B felonies,[2] and Carrying a Handgun Without a License, a Class A misdemeanor.[3] Upon appeal, Booker rais-

---

1. I.C. 35–41–5–1, I.C. 35–42–1–1 (Burns Code Ed. Repl.1998).

2. I.C. 35–42–3–3 (Burns Code Ed. Repl.1998).

3. I.C. 35–47–2–1 (Burns Code Ed. Repl.1998).

es three issues, which we restate as follows:

1. Whether the trial court's instruction regarding attempted murder was fundamentally erroneous;
2. Whether there was sufficient evidence of Booker's intent to kill the victim; and
3. Whether the trial judge erred by failing to recuse herself.

We affirm.

The facts most favorable to the verdict reveal that on May 21, 1997, Timothy Bonilla and his cousin, Darvell McCarley, were at the home of Bonilla's mother. Bonilla and McCarley then entered a car driven by James Edmonds to take a ride to a liquor store. McCarley sat behind the driver in the back seat. Bonilla sat in the front passenger's seat. Already in the back seat of the car, directly behind Bonilla, was Booker. Shortly after the trip had begun, Booker pulled out a gun and pointed it at Bonilla and McCarley as Edmonds drove the car into an alleyway. Booker then took a gold necklace from McCarley. Edmonds also took out a gun, and both he and Booker demanded money from McCarley and Bonilla. At one point, Bonilla felt a gun pressed against the back of his neck. After Booker told Bonilla not to move, he fired his gun, seriously wounding Bonilla. Despite having been shot in the neck, Bonilla was able to exit the car and run home, where his father called for emergency medical assistance. Bonilla was transported to the hospital and survived his injury. Booker was later arrested.

The State charged Booker with attempted murder, robbery, attempted robbery, two counts of criminal confinement, and carrying a handgun without a license. During trial, the trial judge disclosed that her husband was the attorney representing Bonilla's father and uncle in an unrelated matter. Neither the State nor Booker objected, and the judge continued to preside over the trial. The jury convicted Booker of attempted murder, two counts of criminal confinement, and carrying a handgun without a license. Booker now appeals.

## I.

### Jury Instructions

Booker first claims that the trial court's instruction regarding attempted murder violated the rule set forth in *Spradlin v. State* (1991) Ind., 569 N.E.2d 948, regarding the mens rea required for attempted murder. The attempted murder instruction given by the trial court read as follows:

"'The crime of Attempted Murder is defined by statute as follows:

A person who *knowingly or intentionally* kills another human being, commits Murder. A person attempts to commit Murder when, *acting with the culpability required for commission of the Murder,* he engages in conduct that constitutes a substantial step toward commission of the Murder. The crime of Attempted Murder is a Class A Felony.'

To convict the Defendant, Rodney D. Booker, of Attempted Murder as charged in Count I of the Information, the State must prove each of the following elements:

That the Defendant, Rodney D. Booker, on or about May 21, 1997, did attempt to commit the crime of Murder, that is, the said Rodney D. Booker, did:

1. *knowingly or intentionally,*

2. attempt to kill another human being, namely Timothy Bonilla,

3. by engaging in conduct, that is: *with the specific intent to kill,* did shoot at and against the person of Timothy Bonilla by means of a deadly weapon, that is: a handgun,

4. which constituted a substantial step toward the commission of *the intended crime of Murder.*

If the State failed to prove each of these elements beyond a reasonable

doubt, you should find the Defendant, Rodney D. Booker, not guilty of Attempted Murder as charged in Count I of the Information.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant, Rodney D. Booker, guilty of Attempted Murder as charged in Count I of the Information."

Supp. Record at 40–41 (emphasis supplied).

As noted in *Ramsey v. State* (2000) Ind., 723 N.E.2d 869, for over twenty years, our Supreme Court has emphasized the importance of requiring specific intent to kill before a defendant can be convicted of attempted murder. *Id.* at 871 (citing *Zickefoose v. State* (1979) 270 Ind. 618, 388 N.E.2d 507). While there may have been confusion initially, in 1991 our Supreme Court held that an attempted murder instruction "must include the required mens rea of specific intent to kill." *Ramsey, supra* at 871 (citing *Spradlin, supra,* 569 N.E.2d at 950). The *Spradlin* court also held that it is "reversible error for a trial court to instruct a jury that a 'knowing' mens rea [is] sufficient to establish guilt of attempted murder." *Williams v. State* (2000) Ind., 737 N.E.2d 734, 736 (citing *Spradlin, supra* at 951).

Here, the instruction failed to properly instruct the jury with respect to attempted murder because the first paragraph of the instruction informed the jury that the culpability required for attempted murder was the same as that for the commission of murder, that is, knowingly or intentionally.[4] *See Ramsey, supra,* 723 N.E.2d at 871. In the list of elements the State was required to prove, the mens rea required

was also stated as "knowingly or intentionally." Supp. Record at 40. This "problematic 'knowingly or intentionally' conjunctive" is also erroneous. *Williams, supra,* 737 N.E.2d at 737. As the "Spradlin rule" has been the law in Indiana for nearly a decade, we are somewhat perplexed that such improper instructions continue to be given to juries. We fail to see how it could be any clearer; a jury instruction on attempted murder should make no mention of the mens rea of "knowingly."[5] *Id.*

■ Despite the erroneous language of the instruction, Booker's trial counsel failed to object to it at trial. That defense counsel would fail to object to an instruction not in compliance with the Spradlin rule is also somewhat concerning.[6] This is especially true considering that reversal is mandated if the trial court refuses, over the defendant's timely objection, to correctly instruct the jury in accordance with *Spradlin. Greer v. State* (1994) Ind., 643 N.E.2d 324, 326. Ordinarily, such failure to object results in waiver of the issue upon appeal. *Geiger v. State* (1999) Ind. App., 721 N.E.2d 891, 895; Ind.Crim. Rule 8(B). To avoid waiver, Booker argues that the given instruction constitutes fundamental error. "Fundamental error is error that, if not corrected, would deny a defendant fundamental due process." *Majors v. State* (2000) Ind.App., 735 N.E.2d 334, 338. Our Supreme Court has emphasized that a "Spradlin claim presents the potential for fundamental error." *Ramsey, supra,* 723 N.E.2d at 872. Nevertheless, in *Williams, supra,* our Supreme Court recognized that, "there have been cases where, despite clear Spradlin error, we did not vacate an attempted murder conviction because (i) the intent of the

4. Although one may be found guilty of murder without entertaining specific intent to kill, one may not be found guilty of attempted murder without specific intent to kill. *Simmons v. State* (1994) Ind., 642 N.E.2d 511, 512.

5. This is so notwithstanding the phrasing of the general attempt statute, I.C. 35–41–5–1, which states that the offense is committed if

the defendant "act[ed] with the culpability required for commission of the crime." In this regard, therefore, the general attempt statute does not correctly define the crime of Attempted Murder.

6. We note that appellate counsel did not represent Booker at trial.

perpetrator was not a central issue at trial; (ii) *the instructions as a whole sufficiently suggested the requirement of intent to kill;* or (iii) both...." 737 N.E.2d at 737 (emphasis supplied) (footnotes omitted).

The State argues that Booker's intent was not a central issue at trial, and therefore, any error in the instruction was not fundamental. The record does not support this contention. Both the prosecuting attorney and Booker's counsel discussed the requisite specific intent in their closing arguments. (R–446, 462–466). Indeed, during closing arguments, Booker's counsel specifically argued that Booker's specific intent to kill Bonilla had not been established. (R–446). Because Booker's intent was at issue during trial, we must examine whether the instructions as a whole sufficiently suggested the intent to kill requirement. *Williams, supra,* 737 N.E.2d at 737; *Yerden v. State* (1997) Ind., 682 N.E.2d 1283, 1286; *Greer, supra,* 643 N.E.2d at 326.

In *Ramsey, supra,* the following instruction, similar to the one in question here, was given to the jury:

"A person attempts to commit murder when, acting with the culpability required for commission of Murder, he engages in conduct that constitutes a substantial step toward commission of Murder; which is to knowingly or intentionally kill another human being. The crime of attempted murder is a Class A felony.

To convict the defendant of Attempted Murder under Count I, the State must prove each of the following elements:

1. The defendant

2. knowingly

3. with specific intent to kill

4. engaged in conduct

5. which was a substantial step toward the commission of the crime of Murder; which is to knowingly or intentionally kill another human being.

If the State fails to prove each of these elements, you should find the defendant not guilty.

If the State does prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of Attempted Murder, a Class A Felony."

723 N.E.2d at 871.

The Indiana Supreme Court decided that, despite repeated references to a "knowing" mens rea, this instruction did not constitute fundamental error, in part because the trial court listed "specific intent to kill" among the elements required to be proven by the State. *Ramsey, supra,* 723 N.E.2d at 872.

In *Greenlee v. State* (1995) Ind., 655 N.E.2d 488, 491, the trial court gave the following instruction with respect to attempted murder:

"The crime of Attempted Murder is defined by statute as follows:

A person attempts to commit a crime when, acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony of the same class as the crime attempted....

To convict the Defendant the state must have proved each of the following elements:

The Defendant

1. on or about August 20, 1993, knowingly

2. engaged in conduct, to-wit: repeatedly striking at and against the head and body of [the victim] with his hands and feet and then pulling a knife and attempting to stab the [victim] as he lay unconscious on the ground, *with the intent to kill* [the victim].

3. that the conduct was a substantial step toward the commission of the crime of murder.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty."

(emphasis in original). The trial court in *Greenlee* also instructed the jury that "Attempt, is a crime of specific intent, that is, it must be done with the intent to commit a [sic] alleged felony." *Id.* Yet another instruction referred to "the requisite intent to commit murder." *Id.* at 492.

Noting that "the trial court's instructions mentioned intent to kill, intent to commit murder and specific intent" three times, the *Greenlee* court held that, although the attempted murder instruction listed "knowingly" among the enumerated elements, "taken together [the instructions] adequately informed the jury that it needed to conclude that the defendant must have acted with the intent to kill before it could convict him." 655 N.E.2d at 492.

In *State v. Foster* (2000) Ind.App., 733 N.E.2d 534, 540, this court decided that an attempted murder instruction did constitute fundamental error. In *Foster*, the instruction concerning attempted murder read in pertinent part:

"To convict the defendant of Attempted Murder, a Class A Felony, the State must prove each of the following elements beyond a reasonable doubt:

1. The defendant . . .
2. with the specific intent to commit murder, that is knowingly killing [the victim]
3. engaged in conduct which was a substantial step toward murder by knowingly shooting in the direction of [the victim] as charged in the Information."

*Id.* at 536. The charging information, which was also read to the jury, stated that the defendant "did attempt to commit the crime of Murder by knowingly shooting in the direction of [the victim] with a handgun, with the intent to commit the crime of Murder, that is knowingly killing

another human being." *Id.* at 537. Distinguishing *Foster* from *Ramsey, supra,* and *Yerden, supra,* we concluded that there was a "significant infusion of a 'knowing' mens rea within the trial court's final instructions. . . ." *Id.* at 539.

Comparing the present case to *Ramsey, Greenlee,* and *Foster,* we hold that the instruction given by the trial court here was not fundamentally erroneous. Booker attempts to distinguish this case from *Ramsey* by contending that here, unlike in *Ramsey,* the specific intent requirement was not listed as a separate element in the instruction. Instead, the specific intent requirement was listed along with the conduct element. According to Booker, "This single reference to the specific intent to kill, lost in the awkward syntax of the factual allegations of the conduct element, is the only instruction the jury received concerning the specific intent requirement for attempted murder." Appellant's Brief at 6. However, in *Greenlee,* the instruction also listed "intent to kill" in the conduct element of the instruction. 655 N.E.2d at 491.

We also note that the court in *Ramsey, supra,* partially based its conclusion upon the fact that the charging information, which contained the proper mens rea, was read to the jury. 723 N.E.2d at 872.

Here, the charging information read in part as follows:

"Rodney D. Booker, on or about May 21, 1997, did attempt to commit the crime of Murder that is, the said Rodney D. Booker did *knowingly or intentionally attempt to kill* another human being, namely Timothy Bonilla by engaging in conduct, that is; *with the intent to kill,* did shoot at and against the person of Timothy Bonilla by means of a deadly weapon, that is: a handgun which constituted a substantial step toward the commission of said crime of Murder."

Record at 84. Thus, although the charging information states that Bonilla must have acted "with the intent to kill," it

too improperly refers to a mens rea of "knowingly." This distinguishes the case at hand from *Ramsey*.

The case before us is also distinguishable from *Foster, supra,* in which the instruction did not sufficiently inform the jury that it was required to find that the defendant had acted with specific intent. In fact, the instruction in *Foster* was wholly inaccurate when it stated "with the specific intent to commit murder, that is *knowingly* killing [the victim]." (emphasis supplied) *Foster, supra,* 733 N.E.2d at 536. Thus, the jury in *Foster* was instructed that "specific intent" was *equivalent* to knowingly killing the victim. Here, the confusion, if any, was not so pronounced; the instruction did not equate "specific intent" with "knowingly."

Here, after improperly referring to a "knowing" mens rea, the instruction stated that, before the jury could convict Booker, the State had to prove that he shot the victim "with *specific intent* to kill," and that this shooting "constituted a substantial step toward the *intended* crime of Murder." Supp. Record at 40–41. Further, Final Instruction No. 42 informed the jury that, "The crimes charged in this case requires [sic] proof of *specific intent* before the Defendant can be convicted." Supp. Record at 56 (emphasis supplied). Similar to the instructions given in *Greenlee*, the instructions given here twice referred to a requirement of specific intent and once referred to intent to murder. Therefore, we hold that the instruction given in the present case did not amount to fundamental error because the instructions, as a whole, adequately informed the jury that it was required to conclude that Booker acted with the specific intent to kill Bonilla before it could convict Booker of attempted murder.[7]

◼ Booker also claims that Final Instruction No. 42, which defined specific intent, further confused the jury. This instruction read as follows:

"The crimes [sic] charged in this case requires [sic] proof of specific intent before the Defendant can be convicted. 'Specific intent,' as the term implies, means more than the general intent to commit the act. *To establish specific intent the State must prove that the Defendant knowingly did an act which the law forbids, purposely intending to violate the law.* Such intent may be determined from all the facts and circumstances surrounding the case."[8]

Supp. Record at 56 (emphasis supplied). Booker claims that this instruction could have led jurors to believe that "a defendant's intent to violate the law by robbing someone is sufficient specific intent for a conviction for attempted murder." Appel-

---

7. As there seems to be continuing confusion over how to properly instruct a jury with regard to attempted murder, we would suggest that parties refer themselves to the Indiana Pattern Jury Instructions. Pattern Jury Instruction 2.01(a) reads as follows:
   "The crime of attempted murder is defined as follows: A person attempts to commit a murder when, acting with the conscious purpose of killing another person, he engages in conduct that constitutes a substantial step toward killing that person.
   To convict the Defendant of attempted murder, the State must have proved each of the following elements:
   The Defendant:
   1. acting with the conscious purpose of killing [name victim]
   2. did [set out conduct charged as substantial step]
   3. which was conduct constituting a substantial step toward the commission of the intended crime of killing [name victim].
   If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty.
   If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of the crime of attempted murder, a felony."

8. The instruction, in using the plural when referring to the "crimes" charged, would appear to require a specific intent with regard to the confinement and handgun charges. Clearly, however, the instruction only related to the attempted murder charge.

lant's Brief at 7. In essence, Booker is claiming that the jury was improperly instructed that if the State proved that he specifically intended to rob, it also established his specific intent to kill. We find this argument unconvincing. The attempted murder instruction contained the phrases "specific intent to *kill*," and "the intended crime of *Murder*." Supp. Record at 40–41 (emphasis supplied). Such language does not allow the jury to determine that specific intent to commit robbery would satisfy the requisite specific intent to kill. Therefore, we hold that attempted murder instruction, although improper, did not amount to fundamental error mandating reversal of Booker's conviction.

## II.

### Evidence of Intent to Kill

Next, Booker claims that the State failed to present sufficient evidence that he had the required specific intent to support his conviction for attempted murder. It is well established that, upon appeal, this court will neither reweigh the evidence nor judge the credibility of witnesses. *VanMatre v. State* (1999) Ind. App., 714 N.E.2d 655, 657–58. We will consider only that evidence supporting the judgment and any reasonable inferences to be drawn therefrom. *Id.* at 657. We will affirm a conviction if there is sufficient evidence of probative value to support the conviction. *Id.* at 658.

Booker insists that the State offered no direct evidence that he intended to kill Bonilla. Although Booker states that intent to kill may be inferred from the intentional use of a deadly weapon in a manner likely to cause death, *see Robinson v. State* (2000) Ind.App., 730 N.E.2d 185, 195, *trans. denied,* he claims that the State offered "no direct evidence ... that the

Defendant either inflicted a mortal wound or even used the gun in a manner likely to cause great bodily injury or death." Appellant's Brief at 11. Before we turn to Booker's claim, we feel it necessary to address the basis upon which he rests his claim.

Our Supreme Court has long held that *intent* to commit murder may be inferred from the use of a deadly weapon in a manner likely to cause death or serious bodily injury. *Chapman v. State* (1999) Ind., 719 N.E.2d 1232, 1234, *reh'g denied.* Our Supreme Court has also held that "[a] *knowing* killing may be inferred from the use of a deadly weapon in a manner likely to cause death." *Jackson v. State* (2000) Ind., 728 N.E.2d 147, 153 (emphasis supplied). Thus, it can be said that the mens rea to commit *murder* may be inferred from the use of a deadly weapon in a manner likely to cause death or serious bodily injury. As the mens rea required for the offense of murder is "knowingly or intentionally," [9] there is no concern over whether the precise mens rea inferred by the trier of fact is either knowingly [10] or intentionally.[11] However, as noted above, the mens rea required for the offense of attempted murder is "intentionally."

A reading of the case law concerning the specific intent to kill requirement for an attempted murder conviction, might lead one to conclude that various Indiana decisions have inadvertently engrafted the general "intent" element of murder cases, i.e. "knowingly or intentionally" upon the "specific intent to kill" requirement of attempted murder. While this interchangeability of terms might be appropriate when considering an "intentional" mens rea, it does not seem to work vis-à-vis a "knowing" act.

9. I.C. 35–42–1–1. .

10. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. 35–41–2–2(b) (Burns Code Ed. Repl.1998).

11. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. 35–41–2–2(a) (Burns Code Ed. Repl.1998).

To be sure, the use of a deadly weapon in a manner likely to cause death or serious bodily injury is not, in and of itself, equivalent to a conscious objective to kill. The use of a deadly weapon in such a manner may very well establish only that the defendant acted with an awareness of a high probability of killing someone, i.e., knowingly. *See Storey v. State* (1990) Ind., 552 N.E.2d 477, 480 ("The use of a deadly weapon in a manner likely to cause death or great bodily harm permits the jury to infer the defendant's knowledge that he was killing another.") Therefore, when it is said, as our Supreme Court did in *Bethel v. State* (2000) Ind., 730 N.E.2d 1242, 1245, that the intent to commit attempted murder may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury, it may only be read as holding that the trier of fact in that case could infer a conscious objective to kill; otherwise it would run counter to the *Spradlin* rule. Subjective intent is difficult to prove, and the court may have been saying that as an evidentiary matter, the trier of fact may infer that the defendant acted with the conscious objective to kill from the circumstances surrounding the deliberate use of a deadly weapon in a manner likely to cause death or serious bodily injury; however, the use of a deadly weapon in such a manner does not necessarily permit such a conclusion.

In light of this discussion, we now turn to Booker's contention. According to Booker, although the jury could have properly inferred that he shot Bonilla, they could not then have inferred his specific intent to kill based upon the first inference. *Lewis v. State* (1989) Ind.App., 535 N.E.2d 556, 559, stands for the proposition that "a factfinder's determination cannot stand if it is based upon . . . an inference on another inference." In the present case, however, no such "inference stacking" occurred. Contrary to Booker's assertions, the State did present direct evidence that he shot Bonilla in the neck. "Direct evidence immediately establishes the main fact to be proved; circumstantial evidence immediately establishes collateral facts from which the main fact may be inferred." *Nichols v. State* (1992) Ind., 591 N.E.2d 134, 136. The testimony of a witness who saw a defendant commit a crime is direct evidence. *See id.* ("[P]rosecutions resting on direct evidence have tended to feature testimony from someone who actually saw the defendant commit the crime").

When asked during cross examination by Booker's trial counsel if he was sure that Booker had shot the victim, McCarley replied, "Yes." Record at 262. Booker's trial counsel again asked McCarley, "You've indicated that you saw Mr. Booker shoot your cousin and that's what your testimony is today—correct?" To which McCarley replied, "Yes." Record at 264. On re-direct examination by the State, the prosecuting attorney asked, "Mr. McCarley, are you a hundred percent sure that Mr. Booker, the person you've identified previously in court, was the person who shot your cousin?" Again, McCarley replied, "Yes." Record at 273. Bonilla also testified that Booker shot him. Thus, there was direct evidence before the jury that Booker shot Bonilla.

Furthermore, Bonilla testified that Booker was sitting directly behind him, that he felt a cold steel object against his neck, and that both Booker and Edmonds demanded money from him. Bonilla also testified that, after demanding the money, Booker said, "you know what I feel like doing to you," and shot Bonilla in the neck. Record at 394. Thus, there was direct evidence that Booker, after threatening Bonilla, shot him, point-blank, in the neck. From this evidence under the holding in *Bethel, supra,* the jury could properly have inferred that Booker acted with the conscious objective of killing Bonilla.

### III.

### *Failure of Trial Judge to Recuse*

Finally, Booker claims that the trial judge erred by failing to recuse her-

self, and that he is therefore entitled to have his convictions overturned. Before the trial commenced, the trial judge disclosed that her husband was the attorney representing Bonilla's father and uncle in another matter. Our search of the record reveals that Booker made no objection to the trial judge presiding over the trial after he learned of her husband's representation of Bonilla's father and uncle. In fact, after this disclosure, the trial judge asked the parties, "Is everybody okay with that?" Booker's trial counsel replied, "I am, Judge. . . ." Record at 224. "Timeliness is important on recusal issues." *Tyson v. State* (1993) Ind., 622 N.E.2d 457, 460. "Counsel . . . may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits." *Id.* (quoting *Phillips v. Amoco Oil Co.* (1986) 11th Cir., 799 F.2d 1464, 1472). Therefore, any issue concerning the trial judge's decision not to recuse herself has been waived.

### Conclusion

In summary, the jury instructions with respect to attempted murder did not constitute fundamental error, there was sufficient evidence of Booker's intent to kill the victim, and any issue concerning the trial judge's failure to recuse herself has been waived for purposes of appeal.

The judgment is affirmed.

BAILEY, J., and VAIDIK, J., concur.