**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MILES TORAN,                          )
                                      )
    Appellant-Defendant,              )
                                      )
      vs.                          )    No. 49A02-1302-CR-154
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.               )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant Hawkins, Judge
Cause No. 49G05-1204-MR-25631

**September 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Miles Toran appeals his convictions for Murder[1] and Attempted Murder,[2] as well as his sentence. He presents the following restated issues for review:

1.  Did the prosecutor's reference to a photograph that had been excluded from evidence amount to fundamental error?

2.  Was the attempted murder conviction supported by sufficient evidence?

3.  Did the trial court abuse its discretion by admitting certain evidence obtained from Toran's smartphone?

4.  Is Toran's sixty-five-year sentence inappropriate in light of the nature of his offenses and his character?

We affirm.

Sharon and Miles Toran were married in May 2008 and had two daughters together, born in September 2009 and March 2011. At some point, the couple separated and divorce proceedings were initiated. Toran, who was on active duty in the Air Force, lived in Virginia, while Sharon moved with her daughters back to Indianapolis. Toran returned to Indianapolis on Tuesday, April 17, 2012, as there was a custody hearing scheduled for later that week. While in town, he stayed with his parents and siblings, one of whom was at Community East Hospital having a baby that day. Toran left the home on Walma Court around 8:00 that evening and was not seen by his family until sometime around 10:30, when he came home, took a shower, and then left again.

This same day, Sharon was staying with the girls at her parents' home about fourteen minutes away on North Layman Avenue. Around 10:00 p.m., Jonathon Perry, Sharon's

---

1   Ind. Code Ann. § 35-42-1-1 (West, Westlaw current with all 2013 legislation).
2   *Id.*; I.C. § 35-41-5-1 (West, Westlaw current with all 2013 legislation).

brother, waited on the front porch of the Layman residence.  Sharon drove up in her van shortly thereafter with her two young daughters and parked along the street in front of the house.  Perry retrieved the house key from her and went inside with his friend, while Sharon stayed outside to collect her daughters.

Shortly after entering the home and heading to the basement, Perry and his friend heard screaming.  As Perry ran outside and toward the van, he heard his two-and-one-half-year-old niece yell, "daddy", and then Sharon say, "don't do this, Miles." *Transcript* at 658. Perry ran around the front of the van and toward the passenger side, where he encountered Toran, who was dressed in dark clothing, wearing glasses, and armed with a rifle.  Sharon and the girls were closed inside the van.  Toran immediately turned his attention from the van toward Perry and shot Perry once with the rifle at close range.  The shot hit Perry's upper leg near his waist and broke his femur, taking Perry directly to the ground.  Toran then shot multiple times through the window of the van's sliding door, shooting Sharon three times while she was within arm's reach of the children, who were still confined in their car seats.

Although still on the ground, Perry observed Toran run behind a house on the other side of the street and then quickly speed away southbound in a black Honda or Acura.  Police received 911 calls at 10:18 p.m.  Sharon was found dead at the scene, and Perry suffered serious injury to his leg, requiring at least a week-long hospital stay.  At the scene, Perry informed police of the shooter's identity and described the getaway car and direction of travel.

Around 3:00 a.m., Toran went to the Indianapolis City-County Building to make a

3

statement in which he denied any involvement in the shooting. He told police he was separated from his wife and was in town for a custody hearing. He claimed he was nowhere near the Layman residence and had spent the evening at his parent's house and also visiting his sister at the hospital. Cellphone records, however, indicated transmissions from his phone near the area of the shooting in the hour before and within minutes of the shooting. Video surveillance at the hospital also revealed that he was not at the hospital visiting his sister around the time of the shooting.

The State charged Toran with murder and attempted murder on April 21, 2012,[3] and a jury trial commenced on December 10, 2012, ending in a hung jury. Toran was retried on January 7 and 8, 2012 and found guilty as charged. The trial court subsequently sentenced him to sixty-five years for murder and thirty years for attempted murder, with the terms to be served concurrently for a total executed sentence of sixty-five years. On appeal, Toran challenges his convictions and sentence. We will provide additional facts as needed below.

1.

Toran initially contends that the prosecutor committed misconduct by referring to a photograph that had been excluded by an order in limine. Acknowledging that he did not properly preserve this issue below, Toran claims that the misconduct rose to the level of fundamental error.

---

[3] The State also sought a sentencing enhancement under Ind. Code Ann. § 35-50-2-11 (West, Westlaw current with all 2013 legislation), but the State later obtained dismissal of that count.

Fundamental error is an extremely narrow exception to the contemporaneous objection requirement. *Neville v. State*, 976 N.E.2d 1252 (Ind. Ct. App. 2012), *trans. denied*.

> A party's failure to present a contemporaneous trial objection asserting prosecutorial misconduct precludes appellate review of the claim. *Johnson v. State,* 725 N.E.2d 864, 867 (Ind. 2000). Such default may be avoided if the prosecutorial misconduct amounts to fundamental error. For prosecutorial misconduct to constitute fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process [and] present an undeniable and substantial potential for harm." *Benson v. State,* 762 N.E.2d 748, 756 (Ind. 2002); *see also Mitchell v. State,* 726 N.E.2d 1228, 1236 (Ind. 2000).

*Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002).

The picture in question is of Toran smoking a cigar with his arms crossed holding two handguns while in a military uniform. The picture was excluded by a pretrial order in limine. During cross-examination of Toran's brother, defense counsel asked: "does your family have a habit of keeping any firearms in the house?" *Transcript* at 746. The witness responded in the negative, but indicated that he did have a paintball gun. On redirect, the State elicited the following testimony:

> Q     Mr. Ellison, you were talking about, I guess, guns and whether there are guns in the house and whatnot, correct?
> A     Yes. Well, I was asked about it.
> Q     Okay, so you were responding to questions about it.
> A     Yeah.
> Q     Are you familiar with the defendant having access to guns?
> A     Um, I know he did a tour in Afghanistan with the Air Force, um, I've seen a picture of him on Facebook with a handgun. Not to be derogatory but the Air Force isn't really known for being the big tough people in the military and a handgun's about all I know him ever having.

*Id*. at 747. The State then sought to admit into evidence the picture that had been previously

5

excluded, which was the Facebook picture the witness had referenced. Toran objected, and the court sustained the objection. The picture was not admitted into evidence.

During closing, the defense commented that although Toran was in the Air Force, he was only a computer operator and did not use guns on a regular basis. In its rebuttal closing argument, the State argued in part:

> This man's in the Air Force. Defense counsel wants you to believe that he doesn't know anything about weapons, he's a computer guy, he's a computer geek…. And talks about no weapons training, well his own brother said he's got pictures posted on Facebook of him holding guns, smoking cigars.

*Id*. at 1105. Toran did not object to this statement by the prosecutor.

On appeal, Toran argues that the reference to the picture constituted prosecutorial misconduct because the picture had been excluded from evidence and because the State added a detail (i.e., that Toran was smoking a cigar in the picture) that was not in evidence through witness testimony. As set forth above, Toran acknowledges that he has the heightened burden of establishing fundamental error because he did not preserve the issue below. Toran, however, provides no fundamental error analysis and, specifically, does not explain how this brief reference to the picture was "so detrimental to the opportunities for the ascertainment of truth so as to make a fair trial impossible." *Neville v. State*, 976 N.E.2d at 1265. More is required on appeal. *See Hollingsworth v. State*, 987 N.E.2d 1096, 1099 (Ind. Ct. App. 2013) ("[s]imply asserting that error occurred and was harmful is insufficient to establish fundamental error"), *trans. denied*. Accordingly, we find no fundamental error.

6

2.

Toran challenges the sufficiency of the evidence supporting his conviction for attempted murder. He claims that evidence regarding his specific intent to kill Perry was lacking.

> Our standard of review for challenges to the sufficiency of the evidence is well settled.
>
> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

Toran contends that "it must necessarily be inferred that the shooter intended only to wound [Perry]" because the victim was shot only once in the leg from "such a short distance". *Appellant's Brief* at 13. We reject this invitation to reweigh the evidence.

It is well established that the mens rea required for the offense of attempted murder is "intentionally." *Booker v. State*, 741 N.E.2d 748 (Ind. Ct. App. 2000). Although subjective intent is difficult to prove, the trier of fact may infer that the defendant acted with a conscious objective to kill based upon the circumstances surrounding the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. *Id*.

Here, Toran shot Perry at close range with a rifle. The shot hit Perry in the upper leg near his waist, and Perry immediately fell to the ground. Perry temporarily blacked out and was immobilized with a broken femur. With Perry on the ground, Toran then quickly turned

7

his rifle on Sharon and shot her multiple times before fleeing in his hidden get-away car. Perry's injury caused him to be hospitalized for about a week. From this evidence, the jury could reasonably infer that Toran had the specific intent to kill Perry as he attempted to come to his sister's aid.

3.

Next, Toran argues that the trial court erred when it admitted evidence obtained from his smartphone. The evidence in question was four articles downloaded on the phone from the internet within about ten hours of the shootings. Each of the articles touched in some manner on the topic of murder.[4] Toran challenges the admissibility of this evidence on the basis of foundation and relevance.

Admissibility of evidence is within the sound discretion of the trial court, and we will reverse a trial court's decision only for abuse of that discretion. *See Conley v. State*, 972 N.E.2d 864 (Ind. 2012). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Id.* at 871.

We turn first to Toran's argument based upon foundation. In this regard, Toran seems to argue that a foundation for this evidence was not properly laid because the State could not establish whether Toran actually read the articles or even how long each appeared on the screen of his phone.

Indiana Evidence Rule 901(a) provides that "[t]he requirement of authentication or

---

[4] State's Exhibit 40 was an article setting forth the penalties for murder in New South Wales, Australia; 41 was an article suggesting that the evidence in the Scott Peterson murder trial did not support the conviction; 42 was the beginning of an article about writing murder mysteries; and 43 was an article entitled, "How to Show Murder Evidence to a Jury."

identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "Absolute proof of authenticity is not required." *Fry v. State*, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008), *trans. denied*. When evidence establishes a reasonable probability that it is what it is claimed to be, a sufficient foundation has been laid. *Fry v. State*, 885 N.E.2d 742. "Once this reasonable probability is shown, any inconclusiveness of the exhibit's connection with the events at issue affects on the exhibit's evidential weight." *Id*. at 748.

Letters and words set down by electronic recording and other forms of data compilation are included within Rule 901. *Hape v. State*, 903 N.E.2d 977 (Ind. Ct. App. 2009) (addressing the authentication of text messages generated and stored on cellphones), *trans. denied*. Thus, in order to be admissible, electronic data recorded on a cellphone must be authenticated separately from the phone. *Id*. The authentication of data recordings obtained from a cellphone is the same as for those obtained from a personal computer and is satisfied by a showing that the images contained in the exhibits were recovered from the defendant's phone. *See id*. (citing *Bone v. State*, 771 N.E.2d 710 (Ind. Ct. App. 2002)).

In the instant case, Toran does not dispute that the evidence in question was retrieved from his smartphone, as indicated by testimony at trial. Moreover, he did not challenge Detective Brett Search's technical capabilities or the procedures employed in retrieving and producing reproductions of the data/images found on the micro-SD card from the phone. His entire argument is that the State could not establish that he was the one who searched for these articles on his phone or that he ever read them. This goes to the weight of the evidence,

9

not foundation. The State laid a sufficient foundation for this evidence.

Toran additionally argues that this evidence was not relevant. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. To be relevant, the evidence at issue need only have "some tendency, however slight, to make the existence of a material fact more or less probable, or tend to shed any light upon the guilt or innocence of the accused." *Smith v. State*, 982 N.E.2d 393, 402 (Ind. Ct. App. 2013), *trans. denied.* This is a "rather low threshold". *Id.*

The evidence in question indicates that Toran's smartphone was used to access webpages related to murder (that is, the penalty for murder and defending a murder charge) approximately ten hours before the shooting. This circumstantial evidence had at least some tendency to establish Toran's identity as the shooter and to show his intent and motive. The appropriate weight to be given this evidence was properly left for the jury to decide. The trial court did not abuse its discretion by allowing the exhibits into evidence over Toran's objection.

4.

Finally, Toran challenges his sixty-five year sentence for murder, claiming that it is inappropriate in light of the nature of the offense and his character. He asserts that there was nothing about the offense or the offender that justified the maximum sentence.

> The authority granted by Article 7, § 4 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented

through Appellate Rule 7(B). Under this rule and as interpreted by case law, appellate courts may revise sentences—after due consideration of the trial court's decision—if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *See Cardwell v. State,* 895 N.E.2d 1219, 1222–25 (Ind. 2008); *Serino v. State,* 798 N.E.2d 852, 856–57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell,* 895 N.E.2d at 1225.

*Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). The burden of persuading us that the sentence is inappropriate is on the defendant. *Rutherford v. State,* 866 N.E.2d 867 (Ind. Ct. App. 2007).

Initially, we observe that Toran did not receive the maximum sentence, as his sentences could well have been ordered to be served consecutively.[5] In fact, the State asked the trial court to impose eighty-five years (consecutive sentences of fifty-five and thirty years). The trial court rejected the State's request and explained the sentence imposed as follows:

> I don't think 85 years is an appropriate sentence…. And so I'm going to impose the 65 year maximum sentence for murder for all the reasons I have given. I'm not saying that Mr. Toran is the worst of the worse [sic]. But the only way I get 65 is either by mitigating everything and then stacking it which has its own intellectual problem or giving 65 this way. So I'm going to impose the 65 year sentence on the murder, a 30 year on the attempted murder run those concurrent and if we have to reevaluate this post appeal, we'll to it because I know that to get to 65 I'm doing it a nonstandard way. It would be differently illogical if I gave the minimum and then stacked them. But if that's what I'm told to do post appeal I'll try to accomplish the same.

*Transcript* at 1205. At the direction of our Supreme Court, our review will "focus on the forest—the aggregate sentence—rather than the trees—the consecutive or concurrent,

11

number of counts, or length of the sentence on any individual count." *Cardwell v. State*, 895 N.E.2d at 1225. In other words, is Toran's sixty-five year sentence inappropriate in light of his character and the nature of his crimes (murder and attempted murder)?

We agree with Toran that the record does not establish that his character is particularly aggravating. Aside from a relatively minor juvenile history, Toran has no prior criminal history and had been an active member of the Air Force since 2007. Toran was also assessed at a low risk to reoffend.

Turning to the nature of the offenses, we observe that there are significant aggravating circumstances. In addition to the two direct victims in this case, Toran put his own young daughters in harm's way by firing multiple shots into the van in which they were restrained in close proximity to Sharon. Even the pleas from his two-and-one-half-year-old daughter did not deter Toran from making the child a witness to her mother's gruesome murder at the hands of her own father. After shooting Sharon multiple times, Toran fled the scene without any apparent concern for his children, who remained in the shot-up van with their dying mother. Further, as found by the trial court, there appears to have been a high degree of planning that went into Sharon's murder.

Upon considering Toran's character and the nature of the offenses, we conclude that the sixty-five-year aggregate sentence imposed for the murder of Sharon and the attempted murder of her brother is not inappropriate.

---

[5] The maximum sentence Toran faced was actually 115 years (65 for murder and 50 for attempted murder, a class A felony). *See* I.C. § 35-50-2-3 (West, Westlaw current with all 2013 legislation); I.C. § 35-50-2-4 (West, Westlaw current with all 2013 legislation).

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.