## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 20 2019, 8:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| David W. Stone IV<br>Anderson, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Matthew B. MacKenzie<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Josiah L. Boyd,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 20, 2019

Court of Appeals Case No.
18A-CR-2492

Appeal from the Madison Circuit Court

The Honorable Mark Dudley, Judge

Trial Court Cause Nos.
48C06-1709-F1-2356
48C03-1612-F5-2552

**Barteau, Senior Judge.**

# Statement of the Case

[1] Josiah L. Boyd appeals his conviction of attempted murder, a Level 1 felony.[1] We affirm and remand with instructions.

# Issues

[2] Boyd raises two issues, which we restate as:

    I.      Whether the trial court committed fundamental error in admitting evidence at trial.

    II.      Whether there is sufficient evidence to support his conviction.

[3] We raise a third issue on our own: whether Boyd's convictions of two counts of battery, which the trial court deemed merged into the attempted murder conviction but did not vacate, violate Boyd's constitutional protections against double jeopardy.

# Facts and Procedural History

[4] On June 13, 2016, Jerry Hooley was at work in the Correctional Industrial Facility (CIF) in Pendleton, Indiana. He was a case manager, primarily tasked with placing offenders in educational and vocational programs. At that time,

---

[1] Ind. Code §§ 35-41-5-1 (2014) (attempt), 35-42-1-1 (2014) (murder).

Hooley's office was located in a cell block known as "B unit." Tr. Vol. I, p. 235.

[5] Boyd was incarcerated in B unit, and on June 13 he separately approached Officers Tim Neal and Whitney Lyles to complain about being excluded from a vocational class that day. Boyd appeared irritated or angry. Next, he entered Hooley's office to complain. He had previously visited Hooley's office as often as once a week, and he had often become upset during visits. Hooley described Boyd as "adversarial" and "a bully." Tr. Vol. II, p. 40.

[6] Boyd asked Hooley to call another CIF employee to find out why he had been excluded, but Hooley emailed the other employee instead. Hooley assured Boyd that the other employee would get back to him, and the situation would be remedied. Boyd still wanted Hooley to call, but Hooley refused. Boyd left Hooley's office.

[7] Approximately ten minutes later, Hooley was meeting with a cell block representative, with the door closed, when Boyd reentered his office. Boyd was angry and stated that he wanted to file a grievance. Hooley directed Boyd's attention to a stack of grievance forms on a shelf. He also gave Boyd "a stern lecture about being rude and how he wouldn't appreciate it if he was talking to me and somebody barged in . . . ." Tr. Vol. I, p. 250. Boyd took a grievance form and left.

[8] Five to ten minutes later, Boyd entered Hooley's office for a third time and sat down. The cell block representative had left, and Hooley was alone. Boyd

seemed "amped up." Tr. Vol. II, p. 4. Boyd repeatedly said, "what you gonna do," and Hooley believed that "there was aggression coming." *Id.* Hooley called Officer Neal to ask for assistance, hoping that making the call would cause Boyd to leave.

[9]     Next, as Hooley put the phone down, Boyd came around the desk and struck Hooley in the face several times with a closed fist. Hooley's glasses fell off, and he was disoriented. His face was cut, and blood spattered the office. As Hooley tried to block the strikes, Boyd got behind him and put his arm around his throat. Hooley struggled with Boyd, but Boyd continued to strangle him, and "the room started to get dark" because his breathing was restricted. *Id.* at 7. Hooley believed he was dying and thought about his family.

[10]    Meanwhile, Officer Neal had dispatched Officers Lyles and Byrd to Hooley's office in response to his phone call. When Officer Lyles entered Hooley's office, she saw Hooley sitting down, and Boyd had him in a choke hold. "[T]here was blood all over the office," as well as Hooley's head and face. *Id.* at 66. The officers ordered Boyd to release Hooley, but he did not comply. Next, Officer Lyles sprayed pepper spray in Boyd's eyes. Boyd released Hooley and backed up against the wall, saying "I'm done, I'm done." *Id.* at 70. The officers forced Boyd to the floor and placed him in handcuffs.

[11]    Hooley did not remember the guards entering his office. He was struggling with Boyd to keep his airway open, and the next thing he remembered was being on his knees in front of his desk, holding his eye. Hooley heard guards

ordering Boyd to lie on the floor. He also heard Boyd telling the officers that he had "tried to stick [Boyd] with a pen." *Id.* at 12.

[12] Other employees escorted Hooley to CIF's infirmary. Officer Neal saw Hooley as he was being escorted from B unit. He was bleeding from his head, and he appeared weak and shaken. In addition, Investigator John Poer, a investigator employed by CIF, tried to question Hooley on the way to the infirmary, but Hooley "appeared incoherent" and did not respond to Poer's questions. *Id.* at 98. At the infirmary, Hooley told Poer that Boyd had attacked him.

[13] Hooley was later taken to an emergency room. He was diagnosed with a fractured eye socket, and his vision was hindered for weeks. In addition, Hooley had a "tingling" in his neck for months that required physical therapy. *Id.* at 14. One of his ears was damaged, and his hearing was affected for months. He also needed stitches for the cut on his face. Hooley had extensive bruising on his throat. Finally, Hooley saw a counselor for six months after Boyd's attack, and he still gets nervous when an offender becomes upset in his office.

[14] CIF officials began an internal disciplinary proceeding against Boyd. On June 24, 2016, Boyd admitted during a disciplinary hearing that he had attacked a CIF employee.

[15] On December 16, 2016, the State charged Boyd in Cause Number 48C03-1612-F5-2552 with battery against a public safety official, a Level 5 felony. The State also filed a notice of intent to file an habitual offender sentencing enhancement.

The trial court appointed a public defender for Boyd. On April 19, 2017, Boyd's public defender filed a motion to withdraw from the case. The trial court granted the motion and appointed a new public defender.

[16] Next, the State moved to amend its charging information, asking permission to charge Boyd with attempted murder, a Level 1 felony. On September 12, 2017, the court granted the motion after a hearing. The trial court then transferred the case to a different court due to the addition of the Level 1 felony, and a new cause was opened under Cause Number 48C06-1709-F1-2356.

[17] In the meantime, Boyd filed pro se motions to dismiss his counsel and dismiss the case. The court granted the motion to dismiss counsel after a hearing, determining Boyd would proceed pro se. Next, the State filed an objection to the motion to dismiss the case, and the court denied Boyd's motion. Boyd appealed the trial court's ruling, but this Court dismissed his appeal without prejudice. *Boyd v. State*, No. 48A02-1710-CR-2501 (Ind. Ct. App. Jan. 29, 2018).

[18] The trial judge recused from the case, and a special judge accepted jurisdiction. On April 4, 2018, the court held a status hearing and determined that Boyd could continue to represent himself. On July 23, 2018, Boyd filed another motion to dismiss, which the trial court denied.

[19] On August 14, 2018, the State filed a third amended information, charging Boyd with attempted murder, a Level 1 felony; aggravated battery, a Level 3 felony; and battery against a public safety official, a Level 5 felony. On August

15, 2018, Boyd filed a request to enter a "no contest" plea in the case. Appellant's App. Vol. II, p. 224. The court held a hearing on the request, during which the court informed Boyd that Indiana does not recognize such pleas. At the same hearing, Boyd waived his right to be present at trial.

[20] The court presided over a jury trial on August 20, 21, and 23. Boyd was not present. A jury determined Boyd was guilty as charged, and the court entered a judgment of conviction on all three counts. On September 11, 2018, Boyd filed a third motion to dismiss, which the court denied.

[21] The trial court held a sentencing hearing, at which Boyd was present. The trial court determined the battery convictions "merged" with the attempted murder conviction "for sentencing purposes." *Id.* at 26. The court imposed a sentence for the conviction of attempted murder, and this appeal followed.

# Discussion and Decision

## I. Admission of Evidence – Fundamental Error

[22] Boyd argues the trial court erred in admitting several of Hooley's statements into evidence. In general, the trial court has broad discretion to rule on the admissibility of evidence, and we review the court's rulings for an abuse of that discretion. *Weedman v. State*, 21 N.E.3d 873, 889 (Ind. Ct. App. 2014), *trans. denied*. Boyd concedes that because he chose not to be present at trial, he failed to object to the State's evidence. Failure to object at trial constitutes a procedural default that precludes appellate consideration of an issue, unless the

trial court's ruling amounts to fundamental error. *Palilonis v. State*, 970 N.E.2d 713, 730 (Ind. Ct. App. 2012), *trans. denied*.

[23] Fundamental error is a substantial, blatant violation of basic principles rendering the trial unfair and depriving the defendant of fundamental due process. *Tate v. State*, 835 N.E.2d 499, 505 (Ind. Ct. App. 2005), *trans. denied*. "To qualify as fundamental error, 'an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.'" *Id.* (quoting *Merritt v. State*, 822 N.E.2d 642, 643 (Ind. Ct. App. 2005)). The fundamental error exception applies "only in egregious circumstances." *Palilonis*, 970 N.E.2d at 730.

[24] Boyd argues that the trial court erred in admitting the following evidence: (1) Hooley's characterization of Boyd as a bully; (2) the State asking Hooley to describe Boyd's attack twice, in detail; (3) Hooley's opinion on Boyd's intent; and (4) Hooley's opinion that being strangled would result in his death. Boyd concludes that the cumulative effect of this evidence rendered the trial unfair and deprived him of due process of law.

[25] In this case, the evidence against Boyd was strong. In addition to Hooley's testimony, Officer Lyles testified that she saw Boyd strangle Hooley, and he refused to stop until she used pepper spray. Poer testified that Hooley identified Boyd as his attacker. The State presented extensive evidence as to Hooley's injuries, including a neck injury that required months of physical therapy. Finally, Boyd admitted during a disciplinary hearing that he had attacked a CIF employee.

[26]    Hooley's statements about Boyd's character and intent, and his belief that he was about to die, were couched as statements of opinion, not fact. Further, while it would have been better for the State to avoid repetitive testimony by Hooley, Boyd does not identify any inaccuracies or inconsistencies in Hooley's statements. In light of the substantial evidence of Boyd's guilt, we conclude any errors in the admission of the challenged statements were not fundamental. *See Mendenhall v. State*, 963 N.E.2d 553, 567-68 (Ind. Ct. App. 2012) (no error in admitting rebuttal testimony; evidence against Mendenhall was extensive), *trans. denied*.

## II. Sufficiency of the Evidence

[27]    Boyd claims the State failed to present sufficient evidence to sustain his conviction. Specifically, he claims the State did not prove he intended to kill Hooley.

[28]    It is well established that the Court will neither reweigh the evidence nor judge the credibility of witnesses. *Booker v. State*, 741 N.E.2d 748, 755 (Ind. Ct. App. 2000). We will consider only that evidence supporting the jury's verdict and any reasonable inferences to be drawn therefrom. *Id.* Where there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Elliott v. State*, 786 N.E.2d 799, 803 (Ind. Ct. App. 2003).

[29]    To obtain a conviction of attempted murder as charged, the State was required to prove beyond a reasonable doubt that (1) Boyd (2) with the specific intent to kill Hooley (3) engaged in conduct that constituted a substantial step toward

killing Hooley. Ind. Code §§ 35-41-5-1, 35-42-1-1. Intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime. *Kiefer v. State*, 761 N.E.2d 802, 805 (Ind. 2002).

[30] Here, Boyd struck Hooley in the face several times with a closed fist before getting behind him and placing his forearm around his neck, cutting off his air supply. He continued to strangle Hooley, despite Hooley's struggles. Boyd did not stop strangling Hooley even after officers ordered him to release Hooley, and he had to be subdued with pepper spray. Boyd's switch from striking Hooley to strangling him, and his strangulation of Hooley over an extended period of time, are sufficient evidence to establish beyond a reasonable doubt that Boyd specifically intended to kill Hooley rather than merely injure him. Boyd's arguments to the contrary are requests to reweigh the evidence.

## III. Double Jeopardy – Battery Convictions

[31] Double jeopardy violations implicate fundamental rights that we may review sua sponte. *Hayden v. State*, 19 N.E.3d 831, 842 (Ind. Ct. App. 2014), *trans. denied*. After the jury determined Boyd was guilty of both counts of battery, the trial court entered a judgment of conviction on all three counts. Later, during the sentencing hearing, the court determined the battery convictions would merge into the conviction of attempted murder. A trial court's act of merging, without also vacating a conviction, is not sufficient to cure a double jeopardy violation. *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied*. We remand with instructions to vacate both of Boyd's convictions of

battery. *Cf. Carter v. State*, 750 N.E.2d 778, 781 (Ind. 2001) ("a jury verdict on which the court did not enter judgment for one reason or another . . . is unproblematic . . . .").

# Conclusion

For the reasons stated above, we affirm the judgment of the trial court and remand with instructions.

Affirmed and remanded with instructions.

May, J., and Tavitas, J., concur.