David D. ABBOTT, Appellant,

v.

STATE of Indiana, Appellee.

No. 08S00–8712–CR–1192.

Supreme Court of Indiana.

March 28, 1989.

E. Kent Moore, Donald Clementson-Mohr, Cooke Bache Moore Laszynski & Yeager, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Wendy L. Stone, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Murder, for which he received a sentence of forty (40) years, and Feticide, a Class C felony, for which he received a sentence of five (5) years, his sentences to run consecutively.

The facts are: Prior to April 7, 1981, John Geier, Rick Hinman, and appellant worked together at the RCA plant in Monticello and spent their lunch hours together. The subject of their lunch-hour conversations frequently turned to Geier's marital problems and his consideration of a divorce. Appellant suggested, as an alternative to divorce, that they kill Geier's wife.

On April 7, 1981, Hinman and appellant went to the home of John and Cynthia Geier to have dinner. Hinman testified that he wanted to meet Cynthia to see what kind of person she was before they agreed to kill her.

After they ate, the three men walked outside the rural farmhouse and talked about killing Cynthia. Hinman asked John whether he wanted to forget the idea, and John was undecided and "shook up." Appellant said, "I'm going in the house," and he did. Soon thereafter Hinman and John Geier heard Cynthia screaming. Hinman told John to get in the car and leave because there was nothing he could do for her now, and he did.

Appellant had attempted to strangle Cynthia, and when Hinman entered the kitchen, he saw her on the floor, gasping for air with blood coming from her eyes. Hinman testified that he suggested taking her to the hospital, and appellant said, "There ain't no damn way . . . I'm not going to jail now."

They both picked her up and took her outside. Appellant grabbed a shotgun and shot her in the back of the head. She was five months pregnant at the time she was killed.

Appellant and Hinman undressed her body and wrapped it in a blanket. Appellant suggested undressing her so that the body would decay faster. They took her body to a farm in Pulaski County and buried it near a Monon ditch. A week later, John Geier reported to police that his wife was missing.

In March of 1983, appellant joined the Marines. While stationed in Japan appellant became close friends with Terry Treadway and Chip Thompson. They both testified that while they were in Japan they had discussions with appellant about whether they would go to heaven or hell. Appellant stated he would not go to heaven because he had killed a pregnant girl. Appellant spoke on three different occasions about killing a pregnant girl and burying her.

After their tour of duty in Japan ended, Treadway came to Delphi, Indiana and told an assistant prosecutor that appellant had mentioned burying a woman in the area. After some investigation, Hinman gave police a statement inculpating appellant as the killer, and he gave the location of her body. Police located and unearthed the skeleton of Cynthia and that of a fetus.

It was determined that Cynthia died of a gunshot wound to the head. A shotgun slug, which had been fired from a shotgun later identified by Hinman as the murder weapon, was found in the grave site.

Appellant argues his motion for new trial should have been granted due to newly-discovered evidence.

After appellant's trial, his defense counsel filed an affidavit in which he stated that David Hinman, the brother of Rick Hinman, told him that when he visited Rick in jail, Rick told him that appellant was not involved in the death of Cynthia Geier, but he only made such statements upon the advice of an attorney. The affiant further stated that Rick Hinman and John Geier, who both testified at his trial, were offered plea agreements after appellant's trial concluded.

Rick Hinman filed an affidavit stating he did not tell his brother that appellant was not involved in Cynthia Geier's death, but he did tell him that although he had discussed killing Cynthia with John Geier and appellant, they did not agree to do so. He stated that his testimony was truthful with the above-stated exception, and no plea agreement was offered by the State until after appellant's trial. Defense counsel for John Geier filed an affidavit stating that at no time prior to his testimony was a plea agreement offered by the State, and his testimony was not the result of any plea agreement. The prosecutor in appellant's case also filed an affidavit stating that at no time prior to Hinman's or Geier's testimony did he offer a plea agreement to either of them.

■ Appellant contends fundamental due process requires a new trial because Rick Hinman committed perjury at trial, he was eager to make a plea agreement, the prosecutor advocated the truthfulness of his testimony, and immediately after trial the prosecutor entered into a beneficial plea agreement with him. He asserts that, considering the sequence of events, the prosecution bribed the accomplices to testify and he should obtain a new trial under *Newman v. State* (1975), 263 Ind. 569, 334 N.E.2d 684.

In *Newman*, this Court held that the prosecution's nondisclosure of evidence about an agreement of leniency was reversible error. The witness was offered leniency for his testimony before he was called as a witness, and the agreement was found to have reflected on the witness's credibility and was erroneously excluded.

Appellant's case is distinguishable from *Newman*. Hinman testified that the State

had not offered any kind of deal in return for his testimony, and he had attempted to make a deal but the prosecutor refused, stating that he was being subjected to the full penalty under the charge. Considering the affidavits supporting Hinman's testimony, we cannot agree with appellant's conjecture that because Hinman was offered a plea agreement after trial, one existed before trial. We have held that expectations coupled with evidence that a prosecutor-accomplice/witness deal may have been consummated after the in-court testimony is insufficient to bring the case within the *Newman* rule. *Stanley v. State* (1985), Ind., 479 N.E.2d 1315.

Appellant argues at length in his brief that the likelihood was great that his accomplices lied during their testimony, and he gives several reasons in support of his allegation. We acknowledge the inconsistencies in the affidavits of the parties in this case, but on appeal, we will not reweigh the evidence nor judge the credibility of the witnesses. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

■ Appellant's motion also fails under the standard nine-part test for a new trial because his newly-discovered evidence was merely impeaching, and considering the evidence supporting his conviction, it does not follow that the evidence would probably cause a different result upon retrial. *Wilson v. State* (1987), Ind., 511 N.E.2d 1014. We find appellant's motion for new trial was properly denied under *Newman, supra* and *Wilson, supra.*

Appellant argues reversible error occurred when the trial court refused his tendered instructions. His Proposed Instructions Nos. 3 and 4 stated:

"The testimony of an accomplice should be highly scrutinized."

"The consideration which an accomplice expects to receive for his testimony should be considered by you in determining what weight to give to the testimony."

■ Rick Hinman gave several statements to police and each time he added more facts to the story. Appellant asserts that because Hinman had perjured himself and had charges pending against him at the time of trial, his tendered instructions should have been given. He contends testimony of an accomplice must be closely scrutinized and received with caution, citing *Green v. State* (1960), 241 Ind. 96, 168 N.E.2d 345.

The mere fact that certain language or expressions are used in the opinions of this Court to reach its final conclusion does not necessarily make it proper language for instructions to a jury. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228.

An instruction to cautiously scrutinize the testimony of a codefendant is improper because it invades the province of the jury by commenting on the competency or the weight to be given to the testimony of any particular witness. *Tevis v. State* (1985), Ind., 480 N.E.2d 214; *Drollinger, supra.*

■ The trial court in appellant's case gave the appropriate general instruction which stated that the testimony of an accomplice is to be received and weighed by the jury the same as that of any other witness. They were instructed that they are the exclusive judges of the evidence and the credibility of the witnesses, and that they may take into consideration any interest, bias, or prejudice the witness may have, and any relationship with other witnesses or interested parties when making their determination.

The jury was fully instructed on the credibility of the witnesses. Because the subject of appellant's tendered instructions was covered by those given at trial, we find no error. *Richey v. State* (1981), Ind., 426 N.E.2d 389.

■ Appellant also argues the trial court improperly refused his Proposed Instruction No. 2, which stated:

"Evidence of appellant's intoxication at the time of the alleged admissions of defendant that Robert Treadway and Guy Thompson testified to, should be considered by you as to what weight to give to the alleged admissions."

The jury was instructed that they must determine whether appellant made the ad-

mission and if so, what weight should be given to the admission. In determining the weight to be given to an admission, they were to consider all the circumstances under which it was made.

The trial court's instruction was proper and covered the subject of appellant's instruction. We find no error in its refusal. *Id.*

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.