## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 14 2018, 10:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Emilee L. Stotts
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rolly B. Dulworth,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 14, 2018

Court of Appeals Case No.
35A02-1711-CR-2784

Appeal from the
Huntington Circuit Court

The Honorable
Thomas M. Hakes, Judge

Trial Court Cause No.
35C01-1605-F2-75

**Kirsch, Judge.**

[1] Rolly B. Dulworth ("Dulworth) was convicted, following a jury trial, of Level 4 felony burglary,[1] and he appeals, raising the following two restated issues:

> I. Whether the trial court abused its discretion when it refused to give Dulworth's proposed jury instruction concerning accomplice testimony; and

> II. Whether Dulworth's eleven-year executed sentence is inappropriate in light of the nature of the offense and his character.

[2] We affirm.

## Facts and Procedural History

[3] In the summer of 2015, Dulworth met a man named Andrew Stoffel ("Stoffel"). The two were participating in a small-group program that met once a week at a church in Marion, Indiana. The two became friends, spending time together outside of church as well. At the time, Dulworth was not employed, and Stoffel helped Dulworth look for work. When Dulworth was having trouble finding employment, Stoffel wanted "to help [Dulworth] out," so Stoffel paid Dulworth to perform odd jobs at his home. *Tr. Vol. II* at 62. Dulworth also came to Stoffel's home just for social reasons. On one occasion when Dulworth was at the home, Stoffel showed Dulworth a Glock handgun, which he kept in the dresser in his bedroom. *Id.* at 64.

---

[1] *See* Ind. Code § 35-43-2-1(1).

[4] On October 16, 2015, Dulworth, along with three accomplices, Amber McHenry ("McHenry"), Robert Boothby ("Boothby"), and Roger Mitchell ("Mitchell") burglarized Stoffel's home. Boothby drove the group to Stoffel's home and waited in the car. Dulworth went to the front door and checked to see if Stoffel was home. After learning that Stoffel was not there, Mitchell broke some glass in a door using a board, reached in, and unlocked the door, and Dulworth, Mitchell, and McHenry went inside. *Id.* at 158-59. Dulworth took Stoffel's gun, and Mitchell took a safe. *Id.* at 105-06. Boothby drove the parties back to Grant County, to a drug dealer's home, and McHenry exchanged the handgun for crack and heroin. *Id.* at 107-08. Boothby then drove them to Mitchell's home, where Dulworth, Mitchell, and McHenry got high.

[5] At around 10:30 p.m. that same day, Stoffel came home to his residence, saw the broken glass, and realized that his home had been broken into. He discovered that his handgun was missing, along with some ammunition and a fireproof safe that he kept in his bedroom. The safe contained, among other things, vintage coins that Stoffel received from his father. Stoffel contacted police that night to report the incident.

[6] On October 18, 2015, Dulworth, McHenry, and Boothby took the vintage coins to an antique and pawn shop called Tom's Coins in Wabash, Indiana to trade them for money. *Id.* at 144-45. The sale was recorded on the store's video surveillance system, which showed Dulworth handing the coins to the owner, Tom Boyll ("Boyll"). Boyll required identification, but because Dulworth did

not have any, Boothby provided his identification to Boyll. Boyll paid $68, and Boothby drove Dulworth and McHenry to the same drug dealer's home and bought more drugs. Sometime later, Stoffel's father stopped at Tom's Coins and asked whether anyone had sold the items stolen from Stoffel's house. Boyll realized the coins were stolen and provided a video recording of the sale to Stoffel's father, who provided it to police.

[7]  On May 13, 2016, the State charged Dulworth with Count I, Level 2 felony burglary and Count II, Level 4 felony burglary. McHenry, Boothby, and Mitchell all pled guilty for their involvement. *Id*. at 114, 147, 163. In August 2016, Dulworth filed a motion to dismiss Count I, which the trial court granted.[2]

[8]  At the beginning of trial, the trial court read preliminary instructions to the jury, including Preliminary Instruction No. 9, which provided:

> You are the exclusive judges of the evidence, the credibility of the witnesses and the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the manner and conduct of the witness while testifying; any interest,

---

[2] Count I's Level 2 felony burglary charge, which alleged that Dulworth committed the burglary "while armed with a deadly weapon," was based on the fact that a handgun was taken from the house during the burglary. *Appellant's App. Vol. II* at 16, 29-35. In an appeal filed by one of Dulworth's accomplices, this court held that the offense of burglary could not be elevated to a Level 2 felony because a firearm is stolen during the burglary. *State v. McHenry*, 74 N.E.3d 577, 581 (Ind. Ct. App. 2017) (stating that "a defendant who obtains a handgun as loot during the course of a burglary has not 'armed' him or herself as that term is used in Indiana Code section 35-43-2-1(3)(A)"), *trans. denied*. Therefore, the trial court granted Dulworth's motion to dismiss Count I. *Tr. Vol. II* at 37.

bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case. You should attempt to fit the evidence to the presumption that the Defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve. In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testify to a particular fact, or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

*Id.* at 47-48.

[9] At trial, Stoffel testified, describing how he met and became friends with Dulworth through church. Stoffel testified to showing his handgun to Stoffel on one occasion, and he stated that not many people knew about the handgun that he kept in his home. Stoffel said he had prepaid Dulworth, but Dulworth did not complete the work agreed to, and the last time that Dulworth was at his home to perform odd jobs was approximately two or three weeks before the date of the burglary. Stoffel's father, Darwin Stoffel ("Darwin") testified about being contacted by Stoffel on the night of the burglary and going to his son's home and seeing the broken door. Darwin stated that, about two years prior, he had given Stoffel a fireproof lockbox containing coins and Indian artifacts.

He described the various coins and explained that he decided to try and locate the stolen property, so he contacted Tom's Coins, where he had done business before, and showed them a list and pictures of what the coins would have looked like. Darwin obtained video surveillance from Tom's Coins of the transaction and provided it to law enforcement.

[10] Boyll testified and described purchasing the coins on October 18 and then being contacted subsequently by Darwin, asking Boyll if he had purchased some coins, at which time Boyll realized "there was a problem," and he preserved the surveillance footage of the transaction, which was admitted and played for the jury. *Id.* at 129. Indiana State Police Detective Matthew Teusch ("Detective Teusch") testified to speaking with Stoffel and to later being contacted by Darwin about the coins being pawned at Tom's Coins. Darwin provided the video recording of the transaction to Detective Teusch, who then obtained Boothby's identification from Tom's Coins. Boothby met with Detective Teusch and provided him with the details of the burglary. Detective Teusch, thereafter, spoke to Mitchell and, separately, to Dulworth. Dulworth told Detective Teusch about the burglary of Stoffel's home, acknowledging that Stoffel was his "close friend[,]" whom he met through church. *Id.* at 172. Dulworth said that he and the others burglarized the home because they needed heroin money. *Id.* at 173. He admitted to pawning the coins, stating that they first attempted to sell them in Marion, but were unsuccessful, so they sold them in Wabash.

[11]     McHenry, Boothby, and Mitchell also testified for the State concerning the burglary of Stoffel's home. Each stated that, in exchange for pleading guilty, he or she agreed to tell the truth about what happened and agreed to testify against Dulworth. Each acknowledged that, by pleading guilty and testifying against Dulworth, he or she received the benefit of possibly avoiding a longer sentence. Each of them testified to having a criminal history.

[12]     Prior to trial, the parties had submitted proposed jury instructions, and Dulworth tendered an instruction concerning accomplice testimony ("Proposed Instruction No. 6"), which stated that such testimony "must be considered with caution and great care." *Appellant's App. Vol. II* at 72. At the beginning of the second day of trial and out of the presence of the jury, the trial court addressed the matter of jury instructions, and it stated that it did not intend to give Proposed Instruction No. 6 in its final instructions to the jury. *Tr. Vol. II* at 180-81. Dulworth objected to the trial court's decision not to give Proposed Instruction No. 6, and the State argued that it was covered by other instructions and, if the court were to give a separate instruction on accomplice testimony, it would single out the testimony of some witnesses over others. *Id.* at 198-99. The trial court reaffirmed its prior decision not to give a separate instruction regarding accomplice testimony. *Id*. at 199. In reading final instructions to the jury, the trial court reminded the jury of the preliminary instructions that the jury had already received and which remained applicable. *Id*. at 211.

[13]     Following the presentation of evidence, the jury convicted Dulworth of Level 4 felony burglary. At the October 23, 2017 sentencing hearing, the State asserted

that Dulworth's criminal history was an aggravator; at that time, Dulworth had three prior felony convictions, including a burglary conviction, and several misdemeanor convictions, a petition to revoke probation had been filed on a prior burglary conviction, and he was on probation when he committed the burglary of Stoffel's home. The State also argued that Stoffel took advantage of Stoffel's generosity and willingness to help, and it highlighted that Dulworth stole a gun that was traded for drugs and landed in the hands of a drug dealer. Before imposing sentence, the trial court remarked to Dulworth:

> You knew exactly where this man lived. And you knew what he had. I find that that's an aggravator. I find that the gun that was stolen and sold for drugs is an aggravator. I understand, I guess, in some way why you did it. You sold it for drugs. But the Prosecutor's right: it puts a gun back into the hands of somebody who quite frankly shouldn't have a gun. You were on probation at the time. Putting you on probation makes no sense. You had probation revoked, you were on probation at the time, you commit further criminal acts. Uh, there's no acceptance. There's no remorse. And I find that criminal history is quite serious because there's prior felonies. I went through and tried and tried and tried to come up with a mitigator; I couldn't do it.

*Id.* at 227. The trial court imposed an eleven-year sentence with no time suspended. *Appellant's App. Vol. II* at 104. Dulworth now appeals.

# Discussion and Decision

## I. Jury Instruction

[14] Dulworth asserts that the trial court erred when it did not give his Proposed Instruction No. 6 regarding accomplice testimony. The manner of instructing a

jury is left to the sound discretion of the trial court. *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*. We review the trial court's decision only for an abuse of that discretion. *Id*. On review of a trial court's decision to refuse a proposed jury instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence, and (3) is covered in substance by other instructions that are given. *Id*. We consider jury instructions as a whole and in reference to each other. *Evans v. State*, 81 N.E.3d 634, 637 (Ind. Ct. App. 2017). We do not reverse the trial court unless the instructions as a whole misstate the law or mislead the jury. *Id*.

[15] Here, the trial court refused to give the following jury instruction tendered by Dulworth, regarding accomplice testimony:

> You have heard testimony that Roger Mitchell, Amber McHenry and/or Robert Boothby has received benefits from the State of Indiana in connection with this case.

> You may give his/her testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

*Appellant's App. Vol. II* at 72. Dulworth argues that "[t]he proposed jury instruction correctly stated the law, was supported by evidence in the record, and was not adequately covered by other instructions[,]" and, therefore, he asserts, the trial court abused its discretion by refusing to give it. *Appellant's Br.* at 7.

[16]   Dulworth acknowledges that the trial court gave Preliminary Instruction No. 9 which, in part, stated, "[Y]ou are the exclusive judges of the evidence, the credibility of the witnesses and the weight to be given to the testimony of each of them.  In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe, the manner of conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case."  *Tr. Vol. II* at 47.  Dulworth argues, however, that Indiana has "long-standing precedent that the testimony of accomplices should be closely scrutinized and cautiously received[,]" and Preliminary Instruction No. 9 did not instruct the jury of that required "close scrutiny and caution." *Appellant's Br*. at 8.  In support of his argument, Dulworth relies on *Green v. State*, 241 Ind. 96, 168 N.E.2d 345 (1960), where our Supreme Court, in rejecting the defendant's claim that accomplices are incompetent witnesses and holding that accomplices are competent witnesses, made the following statement:  "The testimony of accomplices should be closely scrutinized and cautiously received and this matter should be called to the attention of the trier of facts in considering the weight to be given such evidence."  168 N.E.2d at 348.

[17]   However, Dulworth's reliance on *Green* is erroneous, as *Green* was overruled in part by *Turner v. State*, 258 Ind. 267, 280 N.E.2d 621, 624-25 (1972) and by *Cherry v. State*, 258 Ind. 298, 280 N.E.2d 818, 820-21 (1972), both of which

affirmed the trial court's refusal to give the defendant's tendered instruction stating that an accomplice's testimony should be cautiously received and carefully scrutinized. The *Cherry* Court explained that the giving of a cautionary instruction such as that tendered would be "contrary to decisions holding that it is error to intimate an opinion as to the credibility of a witness or the weight to be given his testimony," and "the question of a witness'[s] possible bias, by reason of a peculiar relationship to the defendant, was better left for the persuasion of counsel by his cross-examination and summation." 280 N.E.2d at 821.

[18] Some years later, our Supreme Court in *Abbott v. State*, 535 N.E.2d 1169, 1172 (Ind. 1989), again addressed and rejected an argument similar to that which Dulworth now makes. In *Abbott*, an accomplice gave statements to police and, each time, he added more facts to the story. Abbott argued that, pursuant to *Green*, the testimony of an accomplice must be closely scrutinized and received with caution and that the trial court committed reversible error when it refused to give two tendered instructions, which stated:

> The testimony of an accomplice should be highly scrutinized.

> The consideration which an accomplice expects to receive for his
> testimony should be considered by you in determining what
> weight to give to the testimony.

*Id*. at 1172. The *Abbott* Court found no error in the trial court's decision not to give the tendered instructions, stating, "An instruction to cautiously scrutinize

the testimony of a codefendant is improper because it invades the province of the jury by commenting on the competency or the weight to be given to the testimony of any particular witness." *Id*. The Court continued:

> [The jurors] were instructed that they are the exclusive judges of the evidence and the credibility of the witnesses, and that they may take into consideration any interest, bias, or prejudice the witness may have, and any relationship with other witnesses or interested parties when making their determination.

*Id*. Finding that the subject of Abbott's tendered instructions was covered by other instructions given at trial, the *Abbott* Court upheld the trial court's refusal to give them. *Id*.

[19] It is thus clear that, under Indiana law, "'[A]n instruction directed to the testimony of one witness erroneously invades the province of the jury when the instruction intimates an opinion on the credibility of a witness or the weight to be given to his testimony.'" *Ludy v. State*, 784 N.E.2d 459, 461 (Ind. 2003) (quoting *Pope v. State*, 737 N.E.2d 374, 378 (Ind. 2000) and citing to *Abbott*). Accordingly, we find that Dulworth's Proposed Instruction No. 6, which was specifically directed to the testimony of the three accomplices and addressed the credibility or weight to be given to such testimony, improperly invaded the province of the jury, and thus the trial court correctly refused to give it.

[20] Furthermore, even if we agreed with Dulworth that Proposed Instruction No. 6 did not invade the province of the jury, we still find that the trial court did not abuse its discretion by not giving the instruction because "the focus is not just

on the rejected instruction but also on the jury instructions in fact given. Even if an instruction is a correct statement of the law and finds support in the evidence, a trial court may in its discretion refuse to give it if it is covered in substance by other instructions." *Albores*, 987 N.E.2d at 100. Here, the substance of Dulworth's proposed instruction was adequately covered by the other instructions given to the jury, and the trial court did not abuse its discretion when it did not give his Proposed Instruction No. 6 regarding accomplice testimony.

## II. Sentencing

[21] The trial court sentenced Dulworth to eleven years with no time suspended, for his Level 4 felony burglary conviction, and Dulworth argues it was an inappropriate sentence in light of the nature of the offense and his character. Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Dulworth's offenses and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more*

appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Dulworth bears the burden of persuading us that his sentence is inappropriate. *Id*.

[22] "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). The advisory sentence for a Level 4 felony conviction is six years, with a range of between two and twelve years. Ind. Code § 35-50-2-5.5.

[23] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Here, Dulworth highlights that before burglarizing the home, he went to Stoffel's door and confirmed that Stoffel was not at home, the proceeds were exchanged for cash and drugs, and the stolen coins were recovered from the coin shop. These facts, he argues, do not justify a fully-executed eleven-year sentence. *Appellant's Br*. at 10.

[24] Our review of the record reveals that the circumstances of the offenses are that Stoffel and Dulworth met at church and participated together in a weekly group. They became friends and associated outside of church as well. Because Dulworth was having trouble finding employment, Stoffel offered to pay Dulworth to perform odd jobs around Stoffel's home. Dulworth accepted the offer and received prepayment, but did not complete the jobs. On one occasion when Dulworth was at Stoffel's home, Stoffel showed Dulworth his handgun,

and Dulworth used that knowledge to bring accomplices to Stoffel's home, break in, and steal from him. Dulworth and his accomplices stole the gun and traded it to a drug dealer in exchange for drugs, thereby putting a stolen gun in the hands of a drug dealer. One of Dulworth's accomplices also removed a safe or lockbox from Stoffel's home, which contained coins that Stoffel's father had given to him. Dulworth sold the coins to a pawnshop in exchange for $68, which he used to buy more drugs. We agree with the State that Dulworth "took advantage of Stoffel's friendship and generosity by betraying his trust and stealing" from him. *Appellee's Br.* at 11. We are not persuaded that anything about the nature of the offense warrants a reduction in the imposed sentence.

[25] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Dulworth argues that his prior criminal history was relatively minor, that he was raised by adoptive parents but no longer communicates with them because of "his recent trouble with the law," and began using opiates after a car wreck, eventually using them every day, but had not received treatment for his drug abuse. *Appellant's Br.* at 10-11. He urges that his character did not warrant the eleven-year sentence. We disagree that his criminal history is minor. Dulworth has three prior felony convictions, one of which was for Class D felony burglary, and a petition to revoke probation was filed in that case. *Appellant's Confid. App. Vol. II* at 98-99. After committing the present offense, Dulworth was convicted of Level 6 felony domestic battery. *Id* at 99. Furthermore, in the instant crime, Dulworth assembled accomplices and broke into his friend Stoffel's home and stole from

him.  Based on the record before us, we cannot say that his character warrants revision of his sentence.  Accordingly, Dulworth has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[26]    Affirmed.

[27]    Baker, J., and Bradford, J., concur.